UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SOLER,<br><br>                              Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO;<br>CPL. ROBERT GERMAINE; JAVIER MEDINA; DET. MARK MILTON; DET. KEN SMITH; SGT. RICK TURVEY; ERNESTO BAUNELOS; LISA WILKINS; RAY HOBBS; SAN DIEGO COUNTY SHERIFF'S DEPARTMENT; SAN DIEGO COUNTY OFFICE OF THE PUBLIC DEFENDER; SALVATORE TARANTINO; DOES 1-5, 7-25, AND 28-35,<br><br>                              Defendants. | Case No.: 14cv2470-MMA (RBB)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR ORDER COMPELLING DEFENDANTS TO ALLOW AUDIO/VIDEO RECORDING DURING SITE INSPECTION AT SAN DIEGO JAIL [ECF NO. 75]** |

On April 18, 2016, Plaintiff James Soler ("Plaintiff") filed "Plaintiff's Notice of Motion and Motion for Order Compelling Defendants to Allow Audio/Video Recording During Site Inspection at San Diego Jail" (the "Motion to Compel") with a declaration of Todd W. Burns [ECF No. 75]. Defendants County of San Diego, Banuelos, Germain,

1

Medina, Milton, Smith, Tarantino, and Turvey ("Defendants") filed a "Memorandum of Points and Authorities in Support of Opposition to Plaintiff's Motion for an Order Compelling Defendants to Allow Audio/Video Recording During Site Inspection at San Diego Jail" (the "Opposition") with a declaration of Captain Dennis Flynn on April 21, 2016 [ECF No. 85]. Following a telephonic attorneys-only discovery conference, (see Mins. 1, Apr. 22, 2016, ECF No. 87), Plaintiff filed a Reply on April 29, 2016 [ECF No. 90]. For the reasons discussed below, Soler's Motion to Compel [ECF No. 75] is **DENIED**.

## I. BACKGROUND

Plaintiff is currently engaged in litigation against several Defendants arising from his alleged wrongful arrest and detention in January of 2014. (See Third Am. Compl. 8-22, ECF No. 60.)[1] As part of the ongoing discovery process, Soler submitted a Rule 34 request to San Diego County and the San Diego Sheriff's Department that Plaintiff, his attorney(s), and a videographer be permitted entry into the areas of San Diego Central Jail where he was detained to inspect, measure, survey, photograph, and make audio and video recordings of those areas. (Mot. Compel 1-2, ECF No. 75.) Defendants agreed to the inspection and to allow Plaintiff to take still photography, but they objected to Soler's request to make audio and video recordings. (Id. at 2.) After unsuccessful meet-and-confer efforts, Plaintiff brought the Motion to Compel. (Id.)

## II. DISCUSSION

In the Motion to Compel, Soler argues that "[t]here is no question that audio/video recording during a site inspection is encompassed within the broad language of Rule 34(a)(1)." (Id. at 3.) He cites Martin v. Reynolds Metals, 297 F.2d 49, 56-57 (9th Cir. 1961), as an example where the Ninth Circuit liberally construed the word "inspection" in Rule 34 and permitted the plaintiff to take samples from the defendant's land. (Id. (citing

---

[1] The Court will cite to all documents using the page numbers assigned by the Court's electronic case filing system.

Martin, 297 F.2d at 56-57).)  Plaintiff states that "[a]udio/video recording is far less intrusive than carrying away samples of a defendant's property[]" and asserts that Defendants have conceded that a site inspection is relevant.  (Id.)

      Soler additionally addresses Defendants' arguments that audio and video recordings would pose an undue burden, impinge on privacy interests of inmates, and cause inmates to misbehave, thus creating an inaccurate portrayal of Plaintiff's experience.  (Id. at 3-5.)  Soler contends that the claim of undue burden "should be given little weight because allowing audio/video recording will not meaningfully increase the burden of the site visit itself, particularly given that the Defendants don't object to still photography."  (Id. at 3.)  Addressing privacy concerns, Plaintiff states, "[I]t is hard not to think of the many programs on television that show audio/video recordings made inside jails, recordings that show countless people in perhaps the most private and embarrassing moments of their lives."  (Id. at 3-4.)  Soler points to an episode of a program called "Jail" that featured the San Diego Central Jail and also notes that the San Diego Sheriff's Department has released its own videos taken inside of the jail showing "people in 'private' and embarrassing situations."  (Id. at 4.)  In light of these videos, he does not give much weight to Defendants' privacy concerns.  (Id.)  Nevertheless, Plaintiff agrees not to video record images of any inmates, or in the alternative, to blur captured images of inmates.  (Id. (citing De Abadia-Peixoto v. U.S. Dep't of Homeland Sec., Case No.: CV 11–04001 RS (KAW), 2013 WL 3555668, at *3 & n.1 (N.D. Cal. July 12, 2013).)

      Last, addressing concerns that videotaping would cause inmates to act up, which would not accurately portray Soler's experiences, Plaintiff argues he "was housed in solitary confinement for nine days, and nothing will truly convey to the jury what that was like, short of spending a substantial amount of time in the jail."  (Id. at 4-5.)  Soler maintains that the sounds of the jail are important for the jury to understand his experience, explaining that he suffered greatly from these sounds.  (Id. at 5.)  He argues that "sounds" are relevant and witnesses can address them at trial:

> It is only fair that [Plaintiff] be able to capture some of those sounds and present that evidence to the jury, and then: (1) he can testify as to the degree the sounds captured on the audio/video recordings were the same, similar, or different from what he experienced; and (2) the Defendants can introduce their own evidence on this topic.

(Id.)

In the Opposition, Defendants respond that Plaintiff's request is not relevant or proportional to the needs of the case, would cause a heavy burden on jail operations, and could put the safety of the facility and the privacy rights of inmates in jeopardy. (Opp'n 1-2, ECF No. 85.) Regarding relevance, they contend that a limited tour and still photographs are sufficient because the "claims in this lawsuit concern whether [Soler] was wrongfully arrested," (id. at 2); the jail itself is not at issue. (Id.) Defendants simultaneously argue, however, that they "do not agree or admit that an inspection of the jail is relevant." (Id.) Because Soler's claims do not concern his treatment while in the jail nor the physical nature of the jail, "there is no direct relevance to inspecting every area where Plaintiff went in the jail." (Id.)

Addressing security, the Defendants note that the jail "is the primary booking facility for the County of San Diego." (Id. at 3.) They explain that "[a]t any given time there are approximately 900 inmates housed at the jail and approximately 120 are processed through the booking areas each day." (Id. (citing id. Attach. #1 Decl. Flynn 2).) Defendants contend that "[j]ust having visitors touring the facility and taking still photographs is a significant impact on the operations, causes interruptions and poses risks." (Id.) They maintain that video and audio recordings would be more of an interference with operations. (Id.) Defendants explain that recordings could reveal confidential information that could lead to security breaches. (Id. (citing id. Attach. #1 Decl. Flynn 3).) Regarding privacy, they assert that it is the jail's policy to not film inmates without their permission. (Id.) Consequently, to allow audio and video recordings as part of the Plaintiff's inspection would require shutting down portions of the jail. (Id.) Defendants complain that this would be an expensive burden, and they

note that if videotaping were allowed, it would cause inmates to act up, which would be dangerous to all and would not accurately portray Plaintiff's experiences. (See id. at 3-4.)

Defendants additionally argue that Soler's references to television shows and a publically-available video of jails "are insufficient to demand that he should be allowed to do his own video." (Id. at 4.) They contend that the video of San Diego Central Jail created by the Sheriff's Department was carefully filmed under a controlled environment and has little or no sound. (Id.) Defendants state, "Plaintiff's reason to want to audio/video the jail is to create an exhibit for the jury to show how horrible it was to be in jail to support a claim for emotional distress damages. This is not a proper reason to grant this motion." (Id.) They moreover assert that this evidence would likely not be admissible at trial because it would play to the sympathies of the jury, (id. (citing Fed. R. Evid. 403)), and could also be excluded on foundational grounds, (id.)

In the Reply, Soler disputes Flynn's declaration that still photography would be easier for the jail to manage than audio or video recordings. (Reply 2-3, ECF No. 90.) Plaintiff explains that the frame area encompassed by a video camera is not appreciably different from that of a still camera, but concedes that "if there is something, or someone, that for some reason should not be photographed, jail officials can indicate that during the inspection, and it will not be photographed, either with still or video photography." (Id. at 2.) Soler also contests that audio or video recordings would take longer than still photography. (Id.) Plaintiff moreover argues that areas of the jail would not need to be shut down during audio or video recordings so that sounds of the jail would not be picked up:

> As Mr. Soler has pointed out before, those sounds are relevant, and the [Sheriff's Department] should not be permitted to effectively prevent him from collecting that sort of evidence, any more than a defendant who is required to allow a plaintiff to collect a soil sample from its property should be permitted to direct a plaintiff to only take that sample from a pile of soil that the defendant designates.

(Id. at 2-3.) Plaintiff explains that this audio will be used to explain his experience to the jury, (id. at 3), and he appears to argue that the Sheriff's Department would be trying to control the quality of his evidence by shutting down portions of the jail during video or audio recordings, (see id.) He "suspects this is what Defendants really fear – that the jury will get an accurate picture of what it is like to be in administrative segregation for nine days. But that is not a valid objection to the audio/video recording." (Id.)

Rule 34 of the Federal Rules of Civil Procedure provides in part as follows:

> A party may serve on any other party a request within the scope of Rule 26(b) . . . to permit entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

Fed. R. Civ. P. 34(a)(2). Caselaw places some limits on this type of discovery. In Keith H. v. Long Beach Unified Sch. Dist., 228 F.R.D. 652, 658-59 (C. D. Cal. 2005) (citation omitted), the court cautioned, "'Since entry upon a party's premises may entail greater burdens and risks than mere production of documents, a greater inquiry into the necessity for inspection would seem warranted.'" Similarly, in De Abadia-Peixoto, 2013 WL 3555668, at *2 (emphasis added), relied upon by Soler, the court stated that a "heightened showing of relevance [was] required to enter secure premises or to inspect 'areas or equipment within Defendants' control that are used for security purposes.'" In another case, the court dealt with inspecting and photographing prison cells. See Silverstein v. Fed. Bureau of Prisons, Civil Action No. 07-cv-02471-PAB-KMT, 2009 U.S. Dist. LEXIS 47646, at *12 (D. Colo. May 20, 2009) (requiring the defendants to produce photographs and diagrams of cells, which they previously agreed to do in their discovery response).

"A party may videotape his site inspection, if the benefit of the videotape to the inspecting party outweighs the burden on the inspected party." Wilson v. Wal-Mart Stores, Case No. 2:15-cv-1791-RCJ-VCF, 2016 WL 526225, at *2 (D. Nev. Feb. 9, 2016) (citing Hofmann v. Fifth Generation, Inc., Case No.: 14-cv-02569-JM-JLB, 2015 WL

7582425, at *3 (S. D. Cal. Nov. 25, 2015); Keith H., 228 F.R.D. at 658-59); see id. at *3 (permitting Plaintiff, in a slip and fall case, to videotape the Wal-Mart aisle where her accident occurred and noting that the area is "where the general public regularly travels")). But where the burden outweighs the benefits, requests for video inspections are denied. See Hofmann, 2015 WL 7582425, at *3 ("The Court is convinced that Plaintiff's request to videotape his site inspection should be barred, at least at this point in the proceedings, as the burden of the requested discovery significantly outweighs its likely benefit.").

In this case, Defendants do not oppose the taking of still photographs by Soler and his counsel. Plaintiff's Motion to Compel seeks an order that the Defendants permit a site inspection and video and audio recording of "the portions of the San Diego jail where Plaintiff was processed, questioned, and held on January 13 through 21, 2016, and allow Plaintiff, his counsel, and a videographer to 'inspect, measure, survey, [and] photograph' the relevant areas, including making audio/video recordings of such locations." (Mot. Compel 1-2, ECF No. 75 (alteration in original).)

Inspecting and photographing portions of San Diego Central Jail is different from creating a day-in-the-life depiction of Soler's experiences at the jail. The burden and disruption of a video and audio inspection and recording outweigh the benefits to the Plaintiff. See Wilson, 2016 WL 526225, at *2. There are approximately 900 inmates housed at San Diego Central Jail, (Opp'n Attach. #1 Decl. Flynn 2, ECF No. 85); protecting the privacy of inmates and jail staff is a concern. Furthermore, there are legitimate safety and security considerations raised by Defendants. The watch commander stated that "[i]n [his] experience, when the inmates see any video camera they begin 'acting up' and make additional noise and commotion . . . ." (Id. at 3.) For the safety of the visitors and to protect the privacy of inmates and jail staff, "booking areas of the jail would have to be shut down and cleared." (Id.) Taking still photographs is less disruptive than making audio and video recordings. (See id. at 2.)

1    De Abadia-Peixoto is analogous to Soler's case.  There, the plaintiffs alleged that
2 "shackling detainees during immigration court proceedings" constituted a violation of
3 due process.  See De Abadia-Peixoto, 2013 WL 3555668, at *1.  The plaintiffs had an
4 expansive list of the areas they sought to inspect and photograph under Rule 34.  The
5 court agreed with the defendant and limited the inspection to "premises possessed or
6 controlled by ICE" and the "'path of the detainee,'" but the inspection and photographing
7 was to take place "outside of business hours."  See id. at *3.  Because of the number of
8 inmates processed and housed at San Diego Central Jail, photographing multiple areas
9 outside of regular business hours is not an option.  Thus, to accommodate Plaintiff's
10 needs, minimize disruption, and avoid an undue burden, only still photography will be
11 permitted.  The Court finds that the burden of audio and video recording outweighs the
12 benefit.  See Hofmann, 2015 WL 7582425, at *3 (denying a motion to compel a video
13 inspection, noting that "[a] videotaped site inspection poses a significant burden to
14 Defendant in terms of business disruption, safety, and proprietary and trade secret
15 interests[]"); cf. Wilson, 2016 WL 526225, at *3 ("Wal-Mart is a retail store, Wilson
16 wishes to videotape an area where the general public regularly travels, and the
17 participants will likely not face conditions that would require Wal-Mart to safeguard
18 them . . . .  Wal-Mart's argument that the burden of videotaping will outweigh the benefit
19 is unpersuasive.").

20    In sum, Plaintiff is permitted to take still photography during the site inspection,
21 but he may not make audio or video recordings of the inspection.
22 //
23 //
24 //
25 //
26 //
27 //
28 //

## III.  CONCLUSION

For the reasons stated above, Soler's Motion to Compel [ECF No. 75] is **DENIED**. Plaintiff may conduct a site inspection of San Diego Central Jail.  During this inspection, he may take still photographs, but he may not make audio or video recordings.

IT IS SO ORDERED.

Dated:  June 24, 2016

Hon. Ruben B. Brooks
United States Magistrate Judge

cc:
Judge Anello
All Parties of Record