**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES SOLER,<br><br>                            Plaintiff,<br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>                           Defendants. | Case No.: 14cv2470-MMA (RBB)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 143] |

Plaintiff James Soler brings this civil rights action against the County of San Diego, seven individual San Diego County Sheriff's Deputies, and a former public defender, pursuant to 42 U.S.C. § 1983 and California state law. Plaintiff alleges seven causes of action in his Third Amended Complaint, including violations of his Fourth and Fourteenth Amendment rights, wrongful arrest, wrongful detention, false imprisonment, negligence, legal malpractice, and municipal liability. *See* Doc. No. 60. Defendants move for summary judgment as to all claims. *See* Doc. No. 143. Plaintiff filed an opposition to the motion, to which Defendants replied. *See* Doc. Nos. 147, 148, 155. In addition, the Court granted Plaintiff leave to file a sur-reply. *See* Doc. Nos. 157, 159. The Court took the matter under submission on the briefs pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 156. For the reasons set forth below, the Court **GRANTS** Defendants' motion.

# BACKGROUND[1]

This action arises out of events involving Plaintiff's arrest and subsequent detention for a thirty-year old crime he did not commit. In May 1985, an individual named Steven Lee Dishman was serving a seven year sentence for burglary and theft of property when he escaped from a prison work release program in Arkansas. Plaintiff James DeWolfe Soler and Steven Lee Dishman are not the same person. Nevertheless, on August 7, 2013, after seeing an internet notice describing Dishman's physical characteristics and escape, Plaintiff's neighbor contacted the Arkansas Department of Corrections ("ADOC") to report that Dishman was living in California under the name James DeWolfe Soler.

On September 25, 2013, Ray Hobbs, Director of the ADOC, swore to an affidavit stating that Steven Lee Dishman was living in Alpine, California under the alias of James DeWolfe Soler. Hobbs presented the affidavit to an Arkansas judge, who in turn issued an Affidavit of Probable Cause to support the extradition of "Steven Dishman, a/k/a James DeWolfe Soler" from California to Arkansas. Def. Ex. B. The ADOC forwarded the certified affidavits to the Office of Arkansas Governor Mike Beebe, who issued a requisition for extradition to California Governor Brown.

On November 27, 2013, the Office of the Governor of California issued a Governor's Warrant of Rendition commanding as follows:

> **WHEREAS**, it has been represented to me by the Governor of the State of **Arkansas** that **Steven Lee Dishman aka James De Wolfe Soler** stands convicted under the laws of that state of **Burglary** and **Theft of Property**, thereafter **escaped from custody**, fled from the justice of the State of **Arkansas**, and is now found to be in the State of California; and

---

[1] These facts are taken from Defendants' separate statement, Plaintiff's response, and pertinent declarations and exhibits. The Court finds that the majority of *material* facts in this case are not in dispute. Where a material fact is in dispute, it will be so noted. Facts immaterial to the disposition of Defendants' motion are not recited herein.

**WHEREAS**, pursuant to the provisions of the Constitution and the laws of the State of California and the State of **Arkansas**, the Governor of the State of **Arkansas** has demanded of me that I shall cause the fugitive to be arrested and delivered to **Director Ray Hobbs and/or designated agent(s)** authorized to receive into custody and convey the fugitive back to said state; and

**WHEREAS**, the representation and demand is accompanied by the requisition, a copy of the **Judgment and Commitment**, **Warrant**, and supporting papers certified by the Governor of the State of **Arkansas** to be authentic, whereby the fugitive was convicted of the crime.

**THEREFORE**, I, Edmund G. Brown Jr., Governor of California, acting through my duly authorized Interstate Rendition Officer, command you to arrest and secure **Steven Lee Dishman aka James DeWolfe Soler**, wherever he may be found within this state, and to deliver him into the custody of the designated agents; to be returned to the State of **Arkansas**, there to be dealt with according to law.

Def. Ex. C (bold in original).

On December 6, 2013, the California Governor's Office issued a Request to Locate and Serve, directed to the Extraditions Division of the San Diego County District Attorney's Office, together with the Governor's Warrant and the Arkansas Governor's Agent's Appointment. The Request to Locate and Serve provided the Alpine, California address of James DeWolfe Soler. According to an activity log maintained by a paralegal employed with the Extraditions Division, on January 7, 2014, the paralegal spoke to Defendant Mark Milton, a San Diego Sheriff's Department detective assigned to the Court Services Bureau, regarding the Governor's Warrant. Milton indicated that he would have his "field guys" attempt an arrest. Def. Ex. G. Milton testified during his deposition that he forwarded the materials he received, along with booking information and a photograph of Plaintiff from a previous arrest, to Defendant Sergeant Turvey in the El Cajon Courthouse Field Division.

Turvey supervised Defendant Deputies Germain and Medina, field deputies tasked with serving civil process and warrants for the Sheriff's Department. On January 13, 2014, Germain and Medina encountered Plaintiff at his home in Alpine, California.

Plaintiff provided the deputies with a California Driver's License bearing the name James DeWolfe Soler, and the address listed on the Request to Locate and Serve. Defendants took Plaintiff into custody pursuant to the Governor's Warrant. At the time of his arrest, Plaintiff and his wife denied that he was Steven Lee Dishman, and stated they suspected their neighbors had falsely accused him. Germain and Medina transported Plaintiff to the Alpine Sheriff's Sub-Station, and subsequently to San Diego Central Jail.

The next morning, Plaintiff informed jail staff that he was not Steven Lee Dishman. Defendant Sergeant Banuelos proceeded with an investigation pursuant to the Sheriff's Department Detention Services Bureau Policy for instances where a warrant possibly names the wrong person. In his report, Banuelos recommended that Plaintiff appear at an identity hearing in addition to his extradition hearing. Less than forty-eight hours after his arrest, Plaintiff appeared before a San Diego Superior Court judge for his initial appearance. Defendant Deputy Public Defender Tarantino served as Plaintiff's appointed counsel. Plaintiff informed Tarantino that he was not Steven Lee Dishman. Tarantino learned that no fingerprint comparison had been done, and the court continued the hearing until January 22, 2014 in order for the fingerprint comparison to be completed.

Plaintiff remained in custody after the hearing. A print comparison was performed on Thursday, January 16, 2014. The examiner determined the prints did not match. The District Attorney's Office conducted a confirmatory comparison on Tuesday, January 21, 2014.[2] The prints did not match. The District Attorney's Office notified Defendant Smith, and Plaintiff was released from custody that same day.

Based on these events, Plaintiff brings the following claims: (1) wrongful arrest in violation of the Fourth Amendment against Defendants Germaine, Medina, Milton, Smith, and Turvey; (2) wrongful detention in violation of the Fourth and Fourteenth

---

[2] Monday, January 20, 2014 was Martin Luther King Jr. Day, a legal holiday observed by San Diego County Superior Court and the County of San Diego.

Amendments against all Defendant Officers; (3) municipal liability under 42 U.S.C. § 1983 ("Monell claim") against Defendant County of San Diego; (4) wrongful arrest, detention, and imprisonment in violation of California law against Defendant San Diego County and Defendant Officers; (5) false imprisonment against Defendant San Diego County and Defendant Officers; (6) negligence against Defendant Officers; and (7) professional malpractice against Defendant Tarantino.

## DISCUSSION

Defendants move for summary judgment, disclaiming liability as a matter of law based on the facial validity of the Governor's Warrant and Defendant Officers' reasonable reliance on the warrant to arrest and detain Plaintiff. Alternatively, Defendants argue that even if a constitutional violation occurred, the individual officers are entitled to qualified immunity, and liability cannot be established against the County.

### 1. Legal Standard

"A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it could affect the outcome of the suit under applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248.

The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party does not bear the burden of proof at trial, he may discharge his burden of showing no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The burden then shifts to the opposing party to provide admissible

evidence beyond the pleadings to show that summary judgment is not appropriate. *Id.* at 324. The party opposing summary judgment cannot "rest upon the mere allegations or denials of [its] pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.), cert. denied, 555 U.S. 827 (2008) (internal quotation marks omitted).

### 2. *Evidentiary Objections*

#### a) Plaintiff's Objections

Plaintiff objects to Defendants' Exhibits D, K, M, Q, W, and X, as inadmissible hearsay. Defense Exhibit D, the District Attorney's Office Activity Log, qualifies as a record of regularly conducted activity and exception to the prohibition on hearsay under Federal Rule of Evidence 803(6). Defense Exhibit K, an email string between Defendants Turvey, Germain, and Milton, is also admissible under Rule 803(6) as it "memorialize[s] the official acts" of the deputies while discharging their professional duties. *Neumeyer v. Wawanesa Gen. Ins. Co.*, No. 14cv181-MMA (RBB), 2015 U.S. Dist. LEXIS 59024, at *13 (S.D. Cal. Apr. 24, 2015). With respect to Defense Exhibits M (an arrest report) and Q (a crime/incident report), the exhibits are admissible as public records. "A police report, including the police officer's statements and observations, are admissible in civil cases under the public records hearsay exception." *Id.* at *64 (citing Fed. R. Evid. 803(8)). Accordingly, the Court **OVERRULES** Plaintiff's objections to Defense Exhibits D, K, M, and Q. The Court did not rely upon Defense Exhibits W and X, and finds Plaintiff's objections to these exhibits moot.

#### b) Defendants' Objections

Defendants object to various portions of multiple declarations submitted by Plaintiff in support of his opposition to Defendants' motion, primarily on relevance and hearsay grounds. Defendants also object to approximately 26 of Plaintiff's proffered exhibits on the general grounds that the exhibits are irrelevant, unfairly prejudicial, hearsay, lack foundation, lack personal knowledge, and lack proper authentication. The

Court will "not scrutinize each objection and give a full analysis of identical objections raised as to each fact." *Neumeyer*, 2015 U.S. Dist. LEXIS 59024, at *12-13 (citing *Capitol Records, LLC v. BlueBeat, Inc.*, 765 F. Supp. 2d 1198, 1200 n.1 (C.D. Cal. 2010) (noting that on motions with voluminous objections "it is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised."). However, the Court has taken each of Defendants' objections into consideration. To the extent the Court relies upon contested evidence to resolve the instant motion, the Court **OVERRULES** Defendants' objections.

### 3. Extradition Laws

The Extradition Clause of the United States Constitution provides:

> [A] person charged in any State with Treason, Felony or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime.

U.S. Const. Art. IV, section 2, cl. 2. "[T]he commands of the Extradition Clause are mandatory, and afford no discretion to the executive officers or courts of the asylum State." *Puerto Rico v. Branstad*, 483 U.S. 219, 227 (1987). The power and duty of determining whether the constitutional and statutory requirements to warrant extradition are met rests on the Governor of the asylum state. *Michigan v. Doran*, 439 U.S. 282, 289 (1978). "A governor's grant of extradition is prima facie evidence that the constitutional and statutory requirements have been met." *Id.* at 289. The Extradition Act is the applicable federal implementing statute:

> Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the

executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear.

18 U.S.C. § 3182. "By the express terms of federal law, therefore, the asylum State is bound to deliver up to the demanding State's agent a fugitive against whom a properly certified indictment or affidavit charging a crime is lodged." *California v. Superior Court of Cal.*, 482 U.S. 400, 407 (1987).

"A claim under section 1983 is available to redress violations of federal statutory and constitutional law." *Ghana v. Pearce*, 159 F.3d 1206, 1208 (9th Cir. 1998). Accordingly, violation of the Extradition Act by state or local law enforcement officers states a cause of action under section 1983. *Draper v. Coombs*, 792 F.2d 915, 920 (9th Cir. 1986). In addition, California has adopted its own version of the Uniform Criminal Extradition Act ("UCEA"), Cal. Pen. Code §§ 1548-1558, which "establishes procedures for the interstate transfer of persons against whom criminal charges are outstanding." *Cuyler v. Adams*, 449 U.S. 433, 435 n.1 (1981). A violation of California's extradition laws "can serve as the basis of a section 1983 action where the violation of state law causes the deprivation of rights protected by the Constitution and statutes of the United States." *Draper*, 792 F.2d at 921 (internal quotations omitted).

### 4. Analysis

#### a) Fourth Amendment Claim

Plaintiff alleges that his arrest and detention violated his Fourth Amendment right to be free from unreasonable seizures. Defendants move for summary judgment on the grounds that Plaintiff was arrested pursuant to a facially valid warrant, which provided the officers with probable cause to arrest and detain Plaintiff.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause . . . and particularly describing . . . the persons or things to be seized." U.S. Const. Amend. IV. "The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause. That can happen when the police hold someone

without any reason before the formal onset of a criminal proceeding. But it also can occur when legal process itself goes wrong" and "a person is confined without constitutionally adequate justification." *Manuel v. City of Joliet*, 580 U.S. __, 137 S. Ct. 911, 918 (2017) (internal citations omitted).

Plaintiff argues that his arrest and detention were unreasonable based on the lack of probable cause to support the Governor's Warrant. In the context of interstate extradition proceedings, this is a non sequitur. The probable cause determination lies solely with the demanding state. *See Michigan v. Doran*, *supra*, 439 U.S. at 290 ("When a neutral judicial officer of the demanding state has determined that probable cause exists, the courts of the asylum state are without power to review the determination."). The asylum state has no power to question the probable cause determination of the demanding state. *See id.* at 282; *see also In re Golden*, 65 Cal. App. 3d 789, 796 (1977) (holding that "constitutional and statutory provisions relating to extradition bar inquiry by the asylum state into the merits of the charge against an alleged fugitive"); *see* Cal. Pen. Code § 1553.2 ("The guilt or innocence of the accused as to the crime with which he is charged may not be inquired into by the Governor or in any proceeding after the demand for extradition . . ."). "By postponing inquiry into the existence of probable cause until a fugitive is lawfully returned to the demanding state, a necessary accommodation is achieved between an individual's interest in protection against unfounded invasions of liberty and privacy and the state's interest in upholding the constitutional and statutory principles governing extradition." *Golden*, 65 Cal. App. 3d at 796 (internal citations omitted).

Moreover, once probable cause to arrest has been established, "a law enforcement officer is not required by the Constitution to investigate independently every claim of innocence." *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003) (quotation omitted). Officers are entitled to reasonably rely on an issuing authority's determination of probable cause, and will be shielded from any liability relating to the arrest if they relied on the determination in good faith. *See United States v. Leon*, 468 U.S. 897, 922-23

9

(1984).  Here, officials in the State of Arkansas determined, albeit incorrectly, that probable cause existed to believe that the person living in Alpine, California under the name "James DeWolfe Soler" was a fugitive from their state named "Steven Lee Dishman."  The Office of the Governor of Arkansas compiled affidavits and directed those documents to the Governor of California who, based on the information before him, determined that Arkansas met the statutory requirements to warrant the extradition of the man living under the name "James DeWolfe Soler" in Alpine, California.

Plaintiff asserts that the "most obvious basis" for Defendant Officers' liability is that they arrested Plaintiff "without probable cause to believe that Soler was the person wanted on the warrant."  Pl. Opp. at 41.  This is simply not the case.  Defendant Officers confirmed Plaintiff's identity as James DeWolfe Soler, and arrested the exact man that an Arkansas judge and two state governors previously deemed subject to extradition.  The officers were entitled to rely upon – and in fact, without discretion to disregard – the executive and judicial determination of probable cause that Soler was an alias being used by Dishman.  *See Baker v. McCollan*, 443 U.S. 137, 145-46 (1979) ("Given the requirements that arrest be made only on probable cause and that one detained be accorded a speedy trial, we do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent."); *see also* Cal. Pen. Code § 848 ("An officer making an arrest, in obedience to a warrant, must proceed with the person arrested as commanded by the warrant, or as provided by law.").

Plaintiff also disputes the facial validity of the warrant, and contends that the officers unreasonably relied upon the warrant to arrest and detain Plaintiff.  A Governor's Warrant issued pursuant to Section 1549.2 is presumed valid.  *See* Cal. Pen. Code § 1550.1 ("A warrant issued in accordance with the provisions of Section 1549.2 shall be presumed to be valid . . .").  Plaintiff takes issue with the inclusion of the alias on the face of the warrant, but does not dispute that "James DeWolfe Soler" is his true name.  In general, a warrant that correctly names the person to be arrested is constitutionally

10

14cv2470-MMA (RBB)

sufficient. *Rivera v. Cty. of L.A.*, 745 F.3d 384, 388 (9th Cir. 2014). The arrest of a person named in a valid warrant, even if it turns out to be the wrong individual, will not violate the Fourth Amendment unless the arresting officers acted unreasonably. *Id.* at 389; *see Baker*, 443 U.S. at 145 (an arrest pursuant to a valid warrant does not violate the Constitution, regardless of the outcome of the criminal prosecution).

Plaintiff further contends that the Governor's Warrant did not otherwise satisfy the Fourth Amendment's particularity requirement. Plaintiff points out that the warrant did not include a physical description of either himself or Steven Lee Dishman, which he ascribes to be a key flaw based on the discrepancies between Plaintiff and Dishman's appearances. The Court once again notes that the Governor's Warrant included Plaintiff's correct legal name, which is sufficient to satisfy the Fourth Amendment's particularity requirement. *See West v. Cabell*, 153 U.S. 78, 86 (1894) ("The principle of the common law, by which warrants of arrest, in cases criminal or civil, must specifically name *or* describe the person to be arrested, has been affirmed in the American constitutions.") (emphasis added). And while ordinarily under California law an arrest warrant must describe the wanted individual, *see* Cal. Pen. Code § 850(b), Governor's Warrants are excepted from these requirements. *Id*. § 1549.2. The Governor of California's grant of extradition is prima facie evidence that sufficient documentation exists to establish that a fugitive from justice is found in California. *See* Cal. Pen. Code §§ 1549.2; 1550.1. As such, the ordinary prerequisites for arrest warrants set forth in Section 850 are unnecessary. In this case, the Governor's Warrant properly incorporated the information typically included in a Governor's Warrant, including the recital of the documents received and reviewed by the Office of the Governor leading to the determination that extradition was warranted. *See id*. § 1548.2. No further particularity was required by the Constitution or California law.

The Court finds that Plaintiff was arrested and detained pursuant to a facially valid Governor's Warrant of Rendition. An arrest and detention pursuant to a facially valid warrant does not establish a Fourth Amendment violation. *Baker*, 443 U.S. at 144;

*Erdman v. Cochise County*, 926 F.2d 877, 882 (9th Cir. 1991); *see also Juriss v. McGowan*, 957 F.2d 345, 350 (7th Cir.1992) ("Generally, a person arrested pursuant to a facially valid warrant cannot prevail in a § 1983 suit for false arrest; this is so even if the arrest warrant is later determined to have an inadequate factual foundation."). Accordingly, Defendant Officers are entitled to summary judgment in their favor on Plaintiff's Fourth Amendment claim.

      b) <u>Fourteenth Amendment Claim</u>

California denies bail to extradition subjects by statute. *People v. Superior Court* (*Ruiz*), 187 Cal. App. 3d 686, 689 (1986) (citing Cal. Pen. Code § 1550.1). Therefore, as a result of his arrest on the Governor's Warrant, Plaintiff was remanded into custody and detained for eight days. Plaintiff claims that this prolonged detention violated his Fourteenth Amendment due process rights. Defendant Officers argue that no due process violation occurred, based on Plaintiff's appearance before a judge within 48 hours of his arrest and ultimate release within the applicable statutory time period.

The Fourteenth Amendment does not protect against all deprivations of liberty, but rather, deprivations of liberty without due process of law. The Ninth Circuit has explained that "incarceration based on mistaken identity might violate the Due Process Clause in some circumstances." *Rivera*, 745 F.3d at 390. As relevant here, officers violate the Fourteenth Amendment if they wrongly detain a person where "the circumstances indicated to [them] that further investigation was warranted." *Garcia v. County of Riverside*, 817 F.3d 635 (9th Cir. 2016). Incarceration based on mistaken identity violates the Due Process Clause if either: "(1) the circumstances indicated to the defendants that further investigation was warranted, or (2) the defendants denied the plaintiff access to the courts for an extended period of time." *Rivera*, 745 F.3d at 391.

Once an individual is detained, "a jailor need not independently investigate all uncorroborated claims of innocence if the suspect will soon have the opportunity to assert his claims in front of a judge." *Id.* at 391. Yet in this case, Defendant Banuelos interviewed Plaintiff the morning after his arrest, determined that further investigation

was warranted into Plaintiff's claim of mistaken identity, and recommended that an identity hearing be scheduled. A fingerprint comparison was promptly undertaken. The five day delay between the initial comparison and the required confirmatory comparison, resulted from unfortunate timing. The initial comparison was done on a Thursday before a long holiday weekend. The confirmatory comparison was done on the following Tuesday, when business resumed. Plaintiff was released from custody that day. Further investigation into Plaintiff's identity was warranted in this case, and that is precisely what occurred.

Nor was Plaintiff denied access to the courts. California has adopted the UCEA, which sets forth the particular procedural protections afforded to individuals arrested and detained pursuant to a warrant of rendition. The statute provides, in pertinent part:

> No person arrested upon such warrant shall be delivered over to the agent of the executive authority demanding him unless he is first taken forthwith before a magistrate, who shall inform him of the demand made for his surrender, and of the crime with which he is charged, and that he has the right to demand and procure counsel. . . . A warrant issued in accordance with the provisions of Section 1549.2 shall be presumed to be valid, and unless a court finds that the person in custody is not the same person named in the warrant, or that the person is not a fugitive from justice, or otherwise subject to extradition under Section 1549.1 . . . the person named in the warrant shall be held in custody at all times, and shall not be eligible for release on bail.

Cal. Penal Code § 1550.1. California law further provides that a "defendant shall in all cases be taken before the magistrate without unnecessary delay, and, in any event, within 48 hours after his or her arrest, excluding Sundays and holidays." *Id.* § 825.

Because Plaintiff was arrested pursuant to a facially valid Governor's Warrant, as discussed above, he was legally detained. However, an appearance before a judge is a "significant procedural protection" to which Plaintiff was entitled. *Rivera*, 745 F.3d at 391. It is undisputed that Plaintiff appeared before a judge within forty-eight hours of his arrest in compliance with constitutional and statutory requirements.

California's version of the UCEA provides for further access to the courts, such that "[i]f the accused or his counsel desires to test the legality of the arrest, the magistrate shall remand the accused to custody, and fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus . . ." Cal. Pen. Code § 1550.1. Defendant Tarantino, Plaintiff's assigned counsel, requested a continuance to allow time for a fingerprint comparison. Tarantino indicated to the court that in the event he was not satisfied with the fingerprint results, he would apply for a writ on behalf of his client. The judge set a further status hearing, reserving Plaintiff's right to pursue a writ of habeas corpus if necessary. Plaintiff was released from custody upon completion of the fingerprint comparison. As such, no further hearing was held and no writ was necessary.

In sum, Plaintiff's wrongful eight-day detention, while unfortunate, did not violate the Due Process Clause of the Fourteenth Amendment. *Baker*, 443 U.S. at 146 ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law.").

c) Qualified Immunity

Even if Plaintiff had not been arrested and detained pursuant to a facially valid warrant, Defendant Officers are immune from liability. "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). An officer is entitled to qualified immunity unless (1) facts viewed in the light most favorable to the injured party show that the officer violated a constitutional right, and (2) the right was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), modified by *Pearson*, 555 U.S. at 233.

"It is well established that, in an action for unlawful arrest pursuant to a facially valid warrant, a police officer is entitled to qualified immunity unless no officer of reasonable competence would have requested the warrant." *Case v. Kitsap Cty. Sheriff's Dep't*, 249 F.3d 921, 926 (9th Cir. 2001) (internal quotations omitted). Reasonable

officers in Defendants' position would not have clearly known that their conduct was unlawful under the circumstances. *See Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (holding that "qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law"). Liability only attaches if a reasonably well-trained officer in that position would have known that the affidavit supporting the warrant failed to establish probable cause. *Forster v. County of Santa Barbara*, 896 F.2d 1146, 1147-48 (9th Cir.1990). Here, no officer could have known whether the Governor's Warrant was supported by probable cause. In the context of extradition proceedings, the arresting officers in the asylum state are constitutionally and statutorily prohibited from questioning the demanding state's probable cause finding. *Baker*, 443 U.S. at 145-146. Thus, Defendant Officers were not in a position to determine whether there was an adequate factual basis for the Governor's Warrant, nor were they permitted or otherwise obligated to inquire.

As set forth above, Plaintiff's arrest and detention do not give rise to a constitutional violation. Even if Plaintiff suffered a violation of his Fourth or Fourteenth Amendment rights, Defendant Officers are entitled to qualified immunity.

### d) Municipal Liability Claim

Plaintiff brings a claim against the County pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). Plaintiff alleges that it is the practice of the San Diego County Sheriff's Department to undertake by "snail mail" the exchange of documents and information with other agencies, and only after effectuating an arrest, resulting in wrongful arrests and prolonged detentions. Because the individual officers did not violate Plaintiff's constitutional rights, Plaintiff's claim for municipal liability fails as a matter of law. *See Quintanilla v. City of Downey*, 84 F.3d 353, 355 (9th Cir. 1996) ("[A] public entity is not liable for § 1983 damages under a policy that can cause constitutional deprivations, when . . . an individual officer, acting pursuant to the policy, inflicted no constitutional harm to the plaintiff."); *see also Forrester v. City of San Diego*, 25 F.3d 804, 808 (9th Cir. 1994) (holding that "a finding that the arrests did not involve

the use of unreasonable force" renders "moot the question of whether the city's policy authorized the use of constitutionally excessive force") (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Even if a constitutional violation had occurred, Plaintiff has not demonstrated that "his deprivation resulted from an official policy or custom established by a municipal policymaker possessed with final authority to establish that policy." *Erdman*, 926 F.2d at 882. The County is entitled to summary judgment in its favor as to Plaintiff's municipal liability claim.

The Court notes that Plaintiff seeks leave to discard the basis for his municipal liability claim as set forth in the Third Amended Complaint, in order to allege new theories of liability against the County. However, amendment would be futile based on the Court's determination that no underlying constitutional violation occurred. In addition, although the Federal Rules favor a liberal approach to amendments, amendments may not be used as a device to prevent the efficient resolution of a case. Where, as here, a party proposes amendments while a summary judgment motion is pending, the Court must look closely to determine whether the proposed amendment is a tactic to prevent termination of the case on summary judgment. *Schlacter-Jones v. General Telephone of California*, 936 F.2d 435, 443 (9th Cir. 1990). Defendants seek summary judgment as to all of Plaintiff's current claims. If Plaintiff is allowed to amend his complaint now, he will have effectively evaded the termination of his lawsuit on summary judgment. As such, the Court denies Plaintiff's request for leave to amend his municipal liability claim.

e) State Law Claims

Plaintiff also brings various state law claims against Defendants, including wrongful arrest, false imprisonment, negligence, and professional malpractice. Plaintiff's state law claims are before the Court based on supplemental jurisdiction. *See* 28 U.S.C. § 1367(a). Based on the foregoing, Plaintiff's federal claims are subject to dismissal. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims based on the dismissal of the claims over which the Court has original jurisdiction. *Id.* §

16

14cv2470-MMA (RBB)

1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction."); *see also, Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1000-1001 (9th Cir. 1997) (noting that "'in the usual case in which all federal law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims.'") (quoting *Carnegie-Mellon University. v. Cohill*, 484 U.S. 343, 350, n. 7 (1988)). Accordingly, the Court dismisses Plaintiff's state law claims without prejudice.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' motion for summary judgment and dismisses Plaintiff's federal civil rights claims with prejudice. The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and dismisses those claims without prejudice. The Clerk of Court is instructed to enter judgment accordingly and close the case.

**IT IS SO ORDERED**.

DATE: August 11, 2017

_____
HON. MICHAEL M. ANELLO
United States District Judge