

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

OCT 18 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

JAMES SOLER,

        Plaintiff - Appellant,

v.

COUNTY OF SAN DIEGO; et al.,

        Defendants - Appellees.

No. 17-56270

D.C. No. 3:14-cv-02470-MMA-RBB
U.S. District Court for Southern
California, San Diego

**PARTIAL MANDATE**

    The judgment of this Court, entered February 26, 2019, takes effect this date, <u>only</u> as to Appellees Lisa Wilkins and Ray Hobbs.

    This constitutes the formal mandate of this Court issued pursuant to Rule 41(a) of the Federal Rules of Appellate Procedure.

                              FOR THE COURT:

                              MOLLY C. DWYER
                              CLERK OF COURT

                              By: Quy Le
                              Deputy Clerk
                              Ninth Circuit Rule 27-7

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 26 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JAMES SOLER,<br><br>    Plaintiff-Appellant,<br><br> v.<br><br>COUNTY OF SAN DIEGO; et al.,<br><br>    Defendants-Appellees. | No.  17-56270<br><br>D.C. No.<br>3:14-cv-02470-MMA-RBB<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the Southern District of California
Michael M. Anello, District Judge, Presiding

Argued and Submitted February 7, 2019
Pasadena, California

Before: GOULD, NGUYEN, and OWENS, Circuit Judges.

James Soler appeals from the district court's judgment in his 42 U.S.C. § 1983 action arising from his arrest and detention for a thirty-year-old crime he did not commit. Soler's neighbor falsely reported to Arkansas authorities that Soler, a resident of California, was an Arkansas prison escapee, Steven Dishman. The state of Arkansas issued an extradition request to the state of California, and

---

    *    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

California officials arrested and detained Soler for over eight days before concluding that he was not Dishman and releasing him. The district court dismissed Soler's claims against employees of the Arkansas Department of Corrections ("ADC") for lack of personal jurisdiction, and granted summary judgment in favor of several individual San Diego officers and the County of San Diego.

We review de novo the district court's dismissal for lack of personal jurisdiction and grant of summary judgment. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1067 (9th Cir. 2017); *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). We have jurisdiction under 28 U.S.C. § 1291, and we affirm in part, reverse in part, vacate in part, and remand.

I.      **Personal Jurisdiction**

Soler argues that the district court erred in determining that it lacked personal jurisdiction over Lisa Wilkins, an attorney at ADC, and Ray Hobbs, Director of ADC. On a Federal Rule of Civil Procedure 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff "need only make a prima facie showing" of jurisdiction. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "[U]ncontroverted allegations in the complaint must be taken as true," and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Dole Food Co. v. Watts*, 303

F.3d 1104, 1108 (9th Cir. 2002). California courts may exercise specific jurisdiction if "(1) defendants purposefully availed themselves of the privilege of conducting activities in California . . . ; (2) [plaintiff's] claims arise out of defendants' California-related activities; and (3) the exercise of jurisdiction would be reasonable." *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995).

Here, Soler has made a prima facie showing that all three requirements for specific jurisdiction are satisfied for Wilkins and Hobbs. The first requirement, "purposeful availment," is satisfied because Wilkins and Hobbs engaged in intentional acts "expressly aimed" at California, causing harm in California. *Dole Food Co*, 303 F.3d at 1111. Specifically, Wilkins coordinated the efforts to have the Arkansas Governor issue a warrant of requisition to California for Soler's arrest and detention in California. Wilkins then communicated with California officials on several occasions over the phone and email, including persuading the arresting officer to hold Soler even when the officer doubted that Soler was Dishman. Similarly, Hobbs was Wilkins' supervisor, and he signed all critical documents requesting that the Arkansas Governor issue the warrant of requisition to California. Notably, Hobbs' affidavit provided the only factual basis for an Arkansas judge's probable cause finding that Dishman was living under Soler's name at Soler's California address.

Thus, although Wilkins and Hobbs did not physically travel to California,

they were "directly and significantly involved" in the extradition efforts. *Lee v. City of Los Angeles*, 250 F.3d 668, 694 (9th Cir. 2001) (holding that defendants who did not travel to California, but "were otherwise directly and significantly involved" in the extradition, may satisfy the purposeful availment requirement); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("Jurisdiction . . . may not be avoided merely because the defendant did not *physically* enter the forum State." (emphasis in original)).

Moreover, the exercise of personal jurisdiction here is consistent with *Walden v. Fiore*, in which the Supreme Court explained that jurisdiction "must arise out of contacts that the 'defendant *himself*' creates with the forum State." 571 U.S. 277, 284 (2014) (emphasis in original) (quoting *Burger King Corp.*, 471 U.S. at 475). Wilkins and Hobbs specifically requested that California officials arrest and detain Soler. Thus, it is Wilkins' and Hobbs' own conduct that connects them to California, and they are not being haled into a California court "solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp.*, 471 U.S. at 475 (internal quotation marks omitted).

The remaining requirements for specific jurisdiction are easily satisfied. The parties do not dispute that Soler's "claims arise out of defendants' California-related activities," *Ziegler*, 64 F.3d at 473, and Wilkins and Hobbs have failed to present a "*compelling* case" to overcome the presumption of reasonableness, *id.* at

4

476 (emphasis in original).

Accordingly, we reverse the district court's dismissal of Soler's claims against Wilkins and Hobbs for lack of personal jurisdiction, and remand.

## II.  Summary Judgment

Soler also appeals from the district court's decision to grant summary judgment to several San Diego officers and the County of San Diego on his § 1983 wrongful detention claim.[1]

Soler argues that his detention based on mistaken identity violated both the Fourth and Fourteenth Amendments. However, "post-arrest incarceration is analyzed under the Fourteenth Amendment alone." *Rivera v. County of Los Angeles*, 745 F.3d 384, 389-90 (9th Cir. 2014). Our precedent makes clear that detention based on mistaken identity violates due process if "the circumstances indicated to the defendants that further investigation was warranted." *Id.* at 391; *see also id.* at 392 (explaining that, in contrast, "[u]nsupported claims of mistaken identity, by themselves, do not trigger a duty to investigate further"). These "further investigation" cases generally "involve[] significant differences between the arrestee and the true suspect." *Id.* at 391; *see also, e.g., Garcia v. County of*

---

[1] Soler does not challenge the district court's grant of summary judgment to the defendants on his § 1983 wrongful arrest claim. Soler also does not challenge the district court's grant of summary judgment on his wrongful detention claim to two San Diego officers, Javier Medina and Mark Milton.

5

*Riverside*, 817 F.3d 635, 641 (9th Cir. 2016) (explaining that further investigation was warranted because the arrestee was "nine inches taller and forty pounds heavier than the warrant subject"). Moreover, once further investigation is warranted, the investigation should involve "readily available and resource-efficient identity checks, such as a fingerprint comparison, to ensure that they are not detaining the wrong person." *Garcia*, 817 F.3d at 642.

However, an individual officer may only be liable if there is a "causal connection" between the officer's acts and the constitutional violation. *See Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007). Thus, we analyze each San Diego officer in turn.

Starting with Detective Ernesto Banuelos, a reasonable juror could conclude that he had the necessary causal connection to a violation of Soler's due process rights. Banuelos was assigned to look into Soler's claim of mistaken identity, and—viewing the evidence in the light most favorable to Soler—Banuelos had the duty to initiate further investigation. This is because there were significant differences between Soler's and Dishman's physical appearances. Soler has brown eyes, while Dishman has blue eyes. Soler does not have any visible scars, while Dishman has a scar on his forehead between his eyes, and a scar on his wrist. Thus, Soler's repeated protests of mistaken identity were supported, and Banuelos should have investigated further.

6

A reasonable juror could also conclude that Banuelos failed to initiate such an investigation. For example, Soler asserts that—when Banuelos visited Soler in jail—Banuelos would not listen to him and repeatedly called him a liar. Banuelos stated in his deposition that he observed that Soler had brown eyes and no visible scars, and that he was aware that Dishman had blue eyes and scars, but Banuelos did not tell anyone of this discrepancy. In fact, a San Diego officer wrote in a report the same day that Banuelos visited Soler that a detective from Banuelos's unit confirmed that Soler was positively identified as Dishman—a reasonable juror could conclude that this detective was Banuelos. Banuelos even admitted to handwriting over a piece of Soler's paperwork that Soler had blue eyes. Moreover, Banuelos never conducted a fingerprint comparison, despite filling out paperwork stating that a print match was confirmed.

Although Banuelos wrote in his final report that he recommended further investigation into Soler's mistaken identity claim, he completed this report six days after Soler's release, and the report is inconsistent with the evidence discussed above. Also, the fact that Soler received a hearing the day after Banuelos's visit does not, by itself, break the causal connection between Banuelos's conduct and Soler's wrongful detention. *See Lee*, 250 F.3d at 685. In sum, given the conflicting evidence about whether Banuelos initiated any further investigation, a

reasonable juror could conclude that he violated Soler's rights.[2]

In addition, Banuelos is not entitled to qualified immunity because the right at issue was "clearly established." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In *Garcia v. County of Riverside*, we concluded that an officer was not entitled to qualified immunity because, for these "further investigation" cases, "the standards for determining whether alleged police conduct violates the Fourteenth Amendment were clearly established." *Id.* at 643 (referencing *Lee*, 250 F.3d 668; *Fairley v. Luman*, 281 F.3d 913 (9th Cir. 2002); *Rivera*, 745 F.3d 384; *Gant v. County of Los Angeles*, 772 F.3d 608 (2014)). Specifically, we explained that our decision in *Rivera v. County of Los Angeles* "summarize[d] existing law" when it declared that "officers violate the Fourteenth Amendment if they wrongly detain a person where 'the circumstances indicated to [them] that further investigation was warranted.'" *Id.* at 643 (quoting *Rivera*, 745 F.3d at 391). *Rivera* and our other cases have simply applied this statement "to different allegations by different plaintiffs" and "do not make new law." *Id.* at 644. Thus, similar to the officer in *Garcia*, Banuelos is not entitled to qualified immunity.

As for the other individual officers, Detective Ken Smith, the San Diego

---

[2] Adding to Soler's injury, after San Diego officials finally conducted a fingerprint comparison, and the results revealed that Soler's and Dishman's prints did not match, there was a five-day delay before officials conducted a second, verification fingerprint comparison and released Soler.

Sheriff's Fugitive Task Force member assigned to Soler's case, does not have the "requisite causal connection" to Soler's wrongful detention. *Preschooler II*, 479 F.3d at 1183. Soler's injury is also not attributable to Deputy Robert Germain, the arresting officer, or Sergeant Rick Turvey, Germain's supervisor. Although officers in the field may be liable for failing to investigate potential identity issues under some circumstances, such circumstances are not present here.

Accordingly, we reverse the district court's grant of summary judgment to Detective Banuelos, and affirm the judgment as to the other San Diego officers.

Finally, after the district court erroneously determined that there was no underlying constitutional violation, it denied Soler's request for leave to amend to allege different policies as the bases for municipal liability, and granted summary judgment to the County. Because we determine above that a reasonable juror could conclude that there was a constitutional violation, we vacate the district court's grant of summary judgement to the County. On remand, the district court should reconsider Soler's request for leave to amend his complaint.[3]

Each party shall bear its own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART,**

---

[3] Because the district court dismissed Soler's federal claims, it declined to exercise supplemental jurisdiction over Soler's state law claims. On remand, the district court should reconsider whether to exercise supplemental jurisdiction over the state law claims.

**AND REMANDED**.