## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SOLER, <br><br> Plaintiff, <br><br> v. <br><br> COUNTY OF SAN DIEGO, et al., <br><br> Defendants. | Case No. 14cv2470-MMA (RBB) <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE FOURTH AMENDED COMPLAINT** <br><br> [Doc. No. 210] |

Plaintiff James Soler brings a claim for municipal liability against Defendant County of San Diego ("the County") in this civil rights action pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978), and 42 U.S.C. § 1983. *See* Doc. No. 60. Plaintiff moves for leave to file a Fourth Amended Complaint for the purpose of amending his *Monell* claim against the County. *See* Doc. No. 210. The County filed an opposition to the motion, to which Plaintiff replied. *See* Doc. Nos. 211, 212. The Court took the matter under submission on the briefs pursuant to Civil Local Rule 7.1.d.1 and Federal Rule of Procedure 78(b). *See* Doc. No. 213. For the reasons set forth below, the Court **DENIES** Plaintiff's motion.

1

**BACKGROUND**

This action arises out of events involving Plaintiff's arrest and detention for a thirty-year old crime he did not commit.[1] At the time of his arrest and upon being booked into San Diego Central Jail, Plaintiff stated his innocence and argued that he was the victim of a case of mistaken identity. Defendant San Diego County Sheriff's Deputy Ernesto Banuelos ("Banuelos") was assigned to investigate Plaintiff's claim. Ultimately, Plaintiff was wrongfully detained for eight days before officials confirmed his identity and released him.

Plaintiff brought a Fourteenth Amendment due process claim against Banuelos based on Banuelos' failure to adequately conduct a further investigation into Plaintiff's claim of mistaken identity.[2] Plaintiff also brought a *Monell* claim against the County, alleging that it was the practice of the San Diego County Sheriff's Department to undertake by "snail mail" the exchange of documents and information with other agencies after effectuating an arrest, resulting in wrongful detention.

Banuelos and the County moved for summary judgment in their favor. *See* Doc. No. 143. The Court granted judgment in favor of Banuelos on the ground that Plaintiff's "wrongful eight-day detention, while unfortunate, did not violate the Due Process Clause of the Fourteenth Amendment." Doc. No. 160 at 14.[3] The Court also granted judgment in favor of the County. The Court determined that "[b]ecause the individual [defendant] officers did not violate Plaintiff's constitutional rights, Plaintiff's claim for municipal liability" failed "as a matter of law." *Id*. at 15. The Court further held that "[e]ven if a

---

[1] Based on the parties' and the Court's familiarity with Plaintiff's factual allegations, the Court does not set forth a detailed recitation of those allegations herein except as relevant to the proposed amendment of Plaintiff's *Monell* claim and disposition of the instant motion.

[2] Plaintiff's Fourteenth Amendment claim against Banuelos is Plaintiff's sole remaining claim in this action against an employee of the County.

[3] Citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

constitutional violation had occurred, Plaintiff has not demonstrated that 'his deprivation resulted from an official policy or custom established by a municipal policymaker possessed with final authority to establish that policy.'" *Id.* at 16 (quoting *Erdman v. Cochise County*, 926 F.2d 877, 882 (9th Cir. 1991)). Plaintiff sought to constructively amend his claim, altering his theory of the County's liability to avoid summary judgment. The Court denied Plaintiff leave to amend his *Monell* claim on the grounds that "amendment would be futile based on the Court's determination that no underlying constitutional violation occurred." *Id.* at 16. The Court further noted that "[i]f Plaintiff is allowed to amend his complaint . . . he will have effectively evaded the termination of his lawsuit on summary judgment." *Id.*

Plaintiff appealed. The Ninth Circuit reversed the Court's judgment in favor of Banuelos as to Plaintiff's Fourteenth Amendment claim. The circuit court held that "given the conflicting evidence about whether Banuelos initiated any further investigation, a reasonable juror could conclude that he violated Soler's rights." Doc. No. 203 at 8-9. The Ninth Circuit also held that Banuelos was not entitled to qualified immunity from suit. The circuit court instructed this Court on remand to "reconsider Soler's request for leave to amend his complaint" with respect to his *Monell* claim based on its determination "that a reasonable juror could conclude that" Banuelos violated Plaintiff's Fourteenth Amendment rights. *Id*. at 10.

Plaintiff requests that the Court reconsider its previous ruling and grant him leave to amend his *Monell* claim against the County.

**DISCUSSION**

***1. Legal Standard***

Federal Rule of Civil Procedure 15(a) provides the relevant legal standard.[4] "Rule 15(a) is very liberal and leave to amend 'shall be freely given when justice so requires.'"

---

[4] The County cites Federal Rule of Civil Procedure 16 as providing the applicable legal standard. *See* Doc. No. 211 at 7. Pursuant to that rule, a party must show good cause exists to amend a pleading after

3

*AmerisourceBergen Corp. v. Dialysist West, Inc.*, 445 F.3d 1132, 1136 (9th Cir. 2006) (quoting Fed. R. Civ. P. 15(a)).  Courts consider "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the proposed amendment" in deciding whether justice requires granting leave to amend under Rule 15.  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 370 U.S. 178, 182 (1962)).  These factors are not of equal weight; prejudice to the opposing party is the most crucial factor in determining whether to grant leave to amend.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("As this circuit and others have held, it is the consideration of prejudice to the opposing party that carries the greatest weight."); *see also Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990); *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973).  "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint."  *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

### *2. Analysis*

#### a) Futility of Amendment

First, the Court considers whether Plaintiff's proposed amendment would ultimately be futile.  "Futility of amendment can, by itself, justify the denial of a motion for leave to amend."  *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).  "Leave to amend need not be given if a complaint, as amended, is subject to dismissal."  *Moore*, 885 F.2d at 538.  Plaintiff seeks leave to amend his *Monell* claim against the County

---

a court-ordered deadline for doing so has passed.  *See* Fed. R. Civ. P. 16(b)(4).  On January 14, 2020, the assigned magistrate judge issued the operative post-remand scheduling order setting forth a January 17, 2020 deadline for Plaintiff to file a motion to amend his complaint.  *See* Doc. No. 209 ¶ 1.  Plaintiff timely filed the instant motion.  Accordingly, Rule 16(b)(4) does not apply and Rule 15(a) provides the correct legal standard.

4

based on two theories of municipal liability. The Court considers the relevant law and each proposed theory of liability in turn.

### i. Relevant Law

"Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, *supra*, 436 U.S. at 690. Put another way, to prevail on a claim against a municipal entity for a constitutional violation, a plaintiff must demonstrate that his injury is attributable "to official municipal policy of some nature." *Id.* at 691. As such, "[m]unicipal liability under *Monell* is established where 'the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy.'" *Harper v. City of L.A.*, 533 F.3d 1010, 1024 (9th Cir. 2008) (quoting *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 417 (1997)). The suspect policy "need only cause [the] constitutional violation; it need not be unconstitutional per se." *See Jackson v. Gates*, 975 F.2d 648, 654 (9th Cir. 1992).

Importantly, "it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs*, 520 U.S. at 404.

### ii. Analysis

The question post-remand is whether Plaintiff plausibly alleges that a County policy was the moving force behind Banuelos' purportedly unconstitutional actions.

//
//

a. Special Directive 25

Plaintiff's first theory of municipal liability is based on San Diego District Attorney's Special Directive 25, "Fingerprint Comparisons," a policy requiring verification by a second examiner when fingerprints do not match. Plaintiff alleges that Special Directive 25 was a moving force behind his prolonged wrongful detention. According to Plaintiff:

> Mr. Soler was arrested on January 13, 2014, and on January 16, 2014, a fingerprint technician in the DA's Office compared Mr. Soler's and Mr. Dishman's fingerprints and wrote a report stating that those fingerprints do not match. Pursuant to the DA's Special Directive 25, the prints were then forwarded to another technician for review, who did not conduct the second fingerprint comparison until January 21, 2014, and at that time wrote a second report stating that the men's fingerprints do not match. Because of the requirement for two fingerprint analyses found in Special Directive 25, Mr. Soler was not released from custody until that second print comparison was done on January 21, 2014, thus that Directive was a moving force behind Mr. Soler's on-going unlawful detention.

*Id.* ¶ 64.

The County argues that Plaintiff's proffered amendment is futile because the District Attorney was acting on behalf of the State of California, not the County, when technicians fingerprinted Plaintiff in accordance with the procedures set forth in Special Directive 25. The County further asserts that Banuelos was not tasked with implementing or executing Special Directive 25.

Assuming without deciding that the District Attorney was acting on behalf of the County when it conducted the analyses of Plaintiff's fingerprints, Plaintiff nonetheless fails to plausibly allege that Banuelos' actions were the result of Special Directive 25, or that at any time Banuelos was involved with implementing or executing the District Attorney's fingerprinting procedures. Plaintiff's allegations suggest instead that the District Attorney would not have had to conduct to a fingerprint comparison, thus implicating the objectionable fingerprinting policy, but for Banuelos' inadequate investigation. Of course, *Monell* requires the implementation or execution of the suspect

policy to result in the constitutional violation, not the other way around. Accordingly, amendment of Plaintiff's *Monell* claim based on this theory of liability would be futile.

### b. Policy Q.80

Plaintiff's second theory of municipal liability is based on San Diego County Sheriff's Department Detention Services Bureau Policy/Procedure Q.80, "Possible Wrong Person On Warrant." The purpose of the policy is "[t]o ensure an inmate is correctly identified as being the same subject named in the warrant or document on which he/she is in custody." Doc. No. 210-2 at 117. The policy provides that "[t]he Jail Investigator will be responsible for determining if the inmate is the person named on the warrant." *Id*. The policy directs appropriate action based on the Jail Investigator's findings:

> 3. If the Jail Investigator is unable to determine if the inmate is the subject of the warrant, the inmate will remain in custody. The Jail Investigator will notify the court of jurisdiction and arrange an identity hearing.
>
> 4. If the inmate is determined to be the wrong person, the Watch Commander or his designate (in most cases the Processing Sergeant) will ensure the inmate remains segregated and is processed and released from custody immediately.

*Id.* Plaintiff alleges that "[t]he language of Policy Q.80, and how it is logically understood by SDSD deputies, requires a deputy to have 100% confidence that the wrong man is in custody before ordering that man's release." *Id*. at 239 (Proposed Fourth Amended Complaint ¶ 63).

Plaintiff's purported constitutional deprivation arises out of Banuelos' alleged failure to adequately investigate and verify Plaintiff's identity. In order to establish the requisite causal connection between Banuelos' actions and Policy Q.80, Plaintiff must allege that the County's "deficient procedures are to blame for the misidentification." *Garcia v. Cty. of Riverside*, 817 F.3d 635, 642 (9th Cir. 2016). To this end, Plaintiff claims:

7

> Deputy Banuelos concluded that there was not probable cause to believe that Mr. Soler was the person wanted on the warrant (i.e., Steven Dishman), but he did not release Mr. Soler because he believed there was "some possibility" that he was Mr. Dishman. A person, however, cannot be detained on a warrant once there is no longer probable cause to believe he is the person wanted. Thus, even if there was probable cause for Mr. Soler's initial arrest, when that dissipated based on additional facts learned by Deputy Banuelos and others, Deputy Banuelos and others were required to release Mr. Soler. Deputy Banuelos and others nonetheless continued to hold Mr. Soler because Policy Q.80 indicated that was required, thus Policy Q.80 was a driving force behind Mr. Soler's detention continuing for several more days. The problem with Policy Q.80's language was compounded by the fact that it provides almost no direction as to how a deputy should carry out an investigation, nor is there any other SDSD policy, procedure, or practice that provides such guidance, nor are deputies provided adequate training in this respect by the County of San Diego or the SDSD.

*Id.*

The County argues that this proffered amendment is futile because Plaintiff cannot demonstrate that his injury, to wit, the wrongful eight-day detention, was attributable to Policy Q.80. The County asserts that the policies and procedures of the Uniform Criminal Extradition Act ("UCEA"), adopted and codified as California Penal Code §§ 1548-1558, apply when individuals are detained pursuant to a Governor's Warrant of Rendition, and thus supersede the provisions of Policy Q.80 with which Plaintiff takes issue. As such, the County argues that Policy Q.80 was not the moving force behind Plaintiff's prolonged detention.

While the UCEA provides the authority to detain an individual pursuant to a Governor's Warrant of Rendition, the gravamen of Plaintiff's constitutional claim arises out of Banuelos' inadequate investigation into Plaintiff's identity. Policy Q.80 sets forth the County's general procedures for investigating a detainee's claim of mistaken identity. Plaintiff has plausibly alleged that these procedures were deficient and acted as a moving force behind Banuelos' unlawful actions. Amendment of Plaintiff's *Monell* claim on this theory of liability would not be futile. Therefore, the Court must consider whether the

8

additional relevant factors support amendment of Plaintiff's claim against the County at this stage in the litigation.

### b) Additional Factors

As noted above, if a proposed amendment is not futile, the most critical factor in determining whether to grant leave to amend is prejudice to the opposing party. *See Eminence Capital*, 316 F.3d at 1052 ("Prejudice is the touchstone of the inquiry under rule 15(a)") (internal quotes omitted). Prejudice must be substantial to justify denial of leave to amend. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). "The party opposing amendment bears the burden of showing prejudice." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

The County argues that amendment will result in prejudice because the County never conducted discovery on Plaintiff's new theories of liability, and discovery between the parties has long since concluded. Plaintiff counters that the County will suffer no prejudice, and in any event, he notified the County no later than May 2016 of his intention to advance theories of liability against the County separate and distinct from the theory set forth in his Third Amended Complaint. *See* Doc. No. 210-1 at 9. Plaintiff points to his May 4, 2016 response to one of the County's interrogatories, wherein he identified "the County's jail investigation policy and the recently produced policy concerning fingerprint examinations" as facts supporting his *Monell* claim. Doc. No. 210-2 at 102. Plaintiff argues that the County had ample time to conduct any necessary discovery into Plaintiff's factual claims.

Plaintiff fails to acknowledge, however, that his "new allegations would totally alter the basis of the action" against the County. *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983). In addition to creating potential discovery issues, Plaintiff's new theories of municipal liability "would have greatly altered the nature of the litigation and would have required [the County] to have undertaken, at a late hour, an entirely new course of defense." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

9

Moreover, because Plaintiff did not seek leave to amend his *Monell* claim prior to the then-applicable deadline for filing dispositive motions, the County moved for judgment in its favor on the grounds that Plaintiff's original "snail mail" theory of municipal liability failed as a matter of fact and law. In response, Plaintiff formally abandoned this theory of liability and asserted that "[i]n light of the circumstances, there is effectively no pending motion for summary judgment on the *Monell* claim." Doc. No. 147 at 60. Plaintiff outlined his new theories of liability and remarked that "should the Court conclude that it is necessary for the complaint to be amended to explicitly state these theories, Soler requests leave to do so, or that the complaint be considered constructively amended." *Id*.

As the Court noted previously, a party may not circumvent summary judgment by belatedly amending its claim. *See* Doc. No. 160 at 16 (citing *Schlacter-Jones v. General Telephone of California*, 936 F.2d 435, 443 (9th Cir. 1990), *abrogated in part on other grounds by Cramer v. Consol. Freightways, Inc*., 255 F.3d 683 (9th Cir. 2001)); *see also Roberts v. Arizona Bd. of Regents*, 661 F.2d 796, 798 (9th Cir. 1981) (affirming the denial of a motion for leave to amend solely because the district court found that raising the new issue at the "eleventh hour" was prejudicial to the moving party). Yet this is concededly what Plaintiff attempted to do, without a satisfactory explanation or legal justification. The County moved for summary judgment based on the allegations in Plaintiff's Third Amended Complaint. In response, Plaintiff abandoned those allegations, set forth new bases of liability, and then argued that because the County did "not direct[] its summary judgment motion at the bases for *Monell* liability on which Soler will rely at trial, . . . its motion should be denied." Doc. No. 147 at 63. If the Court had allowed Plaintiff to amend his *Monell* claim – despite the decidedly improper purpose for doing so – the County would have suffered prejudice based on the "'the time and expense of continued litigation on a new theory, with the possibility of additional discovery,'" as well as the inevitability of further dispositive motion practice. *Ascon Properties, Inc*.,

866 F.2d at 1161 (quoting *Troxel Manufacturing Co. v. Schwinn Bicycle Co.*, 489 F.2d 968, 971 (6th Cir. 1973)).

Plaintiff further disclaims any bad faith or undue delay, asserting that he notified the County regarding his new theories of *Monell* liability "shortly after learning of them." Doc. No. 210-1 at 12. Plaintiff's assertion does not aid his cause. Despite reformulating his municipal theory of liability prior to the close of discovery and months before the dispositive motion filing deadline, Plaintiff did not move for leave to amend his *Monell* claim. "A party unduly delays seeking amendment by failing to seek amendment reasonably promptly after it 'knew or should have known' that amendment was called for." *Johnson v. Hewlett–Packard Co.*, 809 F.Supp.2d 1114, 1120 (N.D.Cal.2011), *aff'd*, 546 Fed. Appx. 613, 2013 WL 4757161 (9th Cir. 2013) (quoting *AmerisourceBergen Corp.*, 465 F.3d at 953); *see also Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("A need to reopen discovery and thereby delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend.").

To be clear, given the Ninth Circuit's instruction to reconsider Plaintiff's request to amend his *Monell* claim, the Court does not find that Plaintiff has acted in bad faith or with undue delay by bringing the instant motion. The issue lies with Plaintiff's actions prior to appeal – his delay in seeking amendment was unwarranted and his motive dubious. Most importantly, however, the potential prejudice to the County both then and now is substantial. Accordingly, the Court concludes that granting Plaintiff leave to amend his claim against the County would not be "in the interest of justice," Fed. R. Civ. P. 15(a)(2), and therefore denies Plaintiff's request for leave to amend his *Monell* claim. *See Solomon v. North American Life and Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (finding that the district court did not abuse its discretion in denying leave to amend based on undue delay and prejudice since the motion would have required additional discovery and delayed the proceedings); *see also AmerisourceBergen Corp.*, 465 F.3d at 954 n.10 (quoting 6 Charles Alan Wright, Arthur R. Miller & Mary Kay

Kane, Federal Practice and Procedure § 1487 (2d ed.1990) ("[I]f [an] . . . amendment substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation, the court may deem it prejudicial.").

## CONCLUSION

Based on the foregoing, the Court **DENIES** Plaintiff's motion for leave to amend his *Monell* claim against Defendant County of San Diego.

**IT IS SO ORDERED**.

DATE: March 24, 2020

HON. MICHAEL M. ANELLO
United States District Judge