UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES SOLER,<br><br>                      Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>                      Defendants. | Case No. 14cv2470-MMA (RBB)<br><br>**ORDER DENYING DEFENDANT ERNESTO BANUELOS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>[Doc. No. 232] |

Plaintiff James Soler brings this civil rights action pursuant to 42 U.S.C. § 1983 and California state law based on his arrest and detention for a thirty-year old crime he did not commit. *See* Doc. No. 60. Defendant Ernesto Banuelos, the sole remaining defendant in this action, moves for partial summary judgment as to Soler's false imprisonment and California Bane Act claims. *See* Doc. No. 232. Soler filed an opposition to the motion, to which Banuelos replied. *See* Doc. Nos. 245, 246, 249. The Court took the matter under submission on the briefs pursuant to Civil Local Rule 7.1.d.1 and Federal Rule of Procedure 78(b). *See* Doc. No. 250. For the reasons set forth below, the Court **DENIES** Banuelos' motion.

## BACKGROUND

This action arises out of events involving Soler's arrest and detention for a thirty-year old crime he did not commit.[1] At the time of his arrest and upon being booked into San Diego Central Jail, Soler stated his innocence and argued that he was the victim of a case of mistaken identity. San Diego County Sheriff's Deputy Ernesto Banuelos was assigned to investigate Soler's claim. Ultimately, Soler was wrongfully detained for eight days before officials confirmed his identity and released him.

Soler alleges that Banuelos violated his Fourteenth Amendment due process rights when he failed to adequately conduct a further investigation into Soler's claim of mistaken identity. It has previously been established that "given the conflicting evidence about whether Banuelos initiated any further investigation, a reasonable juror could conclude that he violated Soler's rights." Doc. No. 203 at 8-9.[2] Moreover, Banuelos is not entitled to qualified immunity from suit with respect to Soler's Fourteenth Amendment claim. *See id.* Accordingly, a jury trial is set to begin on December 15, 2020. *See* Doc. No. 209 ¶ 19.

Soler also brings state law causes of action against Banuelos for false imprisonment and violation of California's Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1. Banuelos moves for summary judgment in his favor on both claims. *See* Doc. No. 232. Banuelos argues that he is statutorily immune from suit with respect to Soler's false imprisonment claim because Soler was arrested pursuant to a facially valid Governor's Warrant of Extradition. Banuelos further contends that Soler's Bane Act claim fails for lack of any evidence to establish that Banuelos acted with the requisite intent to establish liability under the act.

---

[1] Based on the parties' and the Court's familiarity with the material facts of this case (both disputed and undisputed), the Court does not set forth a detailed recitation of those facts herein except as relevant to the disposition of the instant motion.

[2] Citations to electronically filed documents refer to the pagination assigned by the CM/ECF system.

## DISCUSSION

### 1. Legal Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of establishing the basis of its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact, and for these purposes the material it lodged must be viewed in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). A fact is material if it could affect the "outcome of the suit" under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *See id.*

If the moving party meets its burden, the nonmoving party must go beyond the pleadings and, by its own evidence or by citing appropriate materials in the record, show by sufficient evidence that there is a genuine dispute for trial. *See Celotex*, 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A "scintilla of evidence" in support of the nonmoving party's position is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson*, 477 U.S. 242 at 252. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor. *Id.* at 255.

//
//

## 2. Analysis

### a) False Imprisonment Claim

Banuelos moves for judgment in his favor as to Soler's false imprisonment claim on the ground that California law provides immunity from tort liability arising out of false imprisonment if at the time of the arrest "reasonable cause" existed "to believe the arrest was lawful."[3] Cal. Pen. Code § 847(b). Banuelos argues that Soler's false imprisonment "claim is barred because Banuelos is immune from suit by virtue of the facially valid Governor's Warrant. In other words, Banuelos had lawful privilege—and was in fact legally obligated—to confine" Soler. Doc. No. 249 at 3.

"False arrest is but one way of committing a false imprisonment." *Collins v. City & Cty. of S.F.*, 50 Cal. App. 3d 671, 673 (1975). Here, in so far as he seeks to hold Deputy Banuelos liable, Soler brings "a claim for false imprisonment grounded upon prolonged detention." *Martinez v. City of L.A.*, 141 F.3d 1373, 1380 (9th Cir. 1998). This he may do because "[u]nder California common law the jailer has long been held liable for false imprisonment if he knew or should have known of the illegality of the imprisonment." *Sullivan v. Cty. of L.A.*, 12 Cal. 3d 710, 717-18 (1974). Banuelos cites to *Lopez v. City of Oxnard*, 207 Cal. App. 3d 1 (1989), in which the state appellate court held that "[j]ail personnel may not be similarly situated to police officers on the street, but they, too, are entitled to rely on process and orders apparently valid on their face." *Id.* at 9. Because it has been established that the Governor's Warrant for Soler's arrest was facially valid, Banuelos contends he is entitled to immunity from suit.[4]

---

[3] "False imprisonment involves the intentional confinement of another against the person's will. The elements are (1) nonconsensual, intentional confinement of a person, (2) without lawful privilege, (3) for an appreciable period of time, however brief." *Bocanegra v. Jakubowski*, 241 Cal. App. 4th 848, 855 (2015) (quoting 5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts § 426, pp. 642–643).

[4] Banuelos also cites to a non-binding district court order granting summary judgment in favor of the defendant county as to the plaintiff's false imprisonment claim after finding that the county did not have sufficient notice the plaintiff was the incorrect person named on a warrant based only on the plaintiff's claim of innocence. *See Hernandez Castro v. City of Hanford*, 546 F. Supp. 2d 822 (E.D. Cal. 2008).

However, the plaintiff in the *Lopez* case made "no allegations that the warrant was either irregular on its face *or that it did not adequately describe him*." *Id.* at 8 (emphasis added). And as the Ninth Circuit has explained in the years since *Lopez*, when a plaintiff premises a false imprisonment claim on wrongful prolonged detention, section 847(b) does not "shield" a defendant "from liability under state law" when its "application is premised on reasonable beliefs, and the crux of Plaintiff's claim is that it was unreasonable for officers to believe that he was the person who was described in the warrant without greater investigation." *Garcia v. Cty. of Riverside*, 817 F.3d 635, 645 (9th Cir. 2016). It has been established in this case that a genuine dispute exists with respect to the reasonableness of Banuelos' conduct. *See* Doc. No. 203 at 6-8; *compare Rivera v. Cty. of L.A.*, 745 F.3d 384, 391 (9th Cir. 2014) ("Rivera has not presented any evidence that the Counties knew that Rivera was not the true subject of the warrant.").

Accordingly, "the question then becomes one of fact. Did [Banuelos] know facts which would have caused a reasonable person to investigate the validity of [Soler]'s incarceration and seek his release? Evidence on this question is conflicting," and summary judgment is inappropriate. *Martinez*, 141 F.3d at 1381.

  b) <u>Bane Act Claim</u>

Banuelos also moves for summary judgment with respect to Soler's Bane Act claim, arguing that there is no evidence to demonstrate that he had the specific intent to deprive Soler of his constitutional rights.

California's Bane Act provides a civil cause of action against anyone who "interferes by threat, intimidation, or coercion . . . with the exercise or enjoyment . . . of rights secured by the Constitution or laws of the United States, or of the rights secured by

---

However, the court reached that decision after concluding that there were "not any facts which raise a triable issue of fact that the County 'knew or should or should have known' that plaintiff was the wrong person." *Id.* at 829. Here, it has been established that "Soler's repeated protests of mistaken identity were supported, and Banuelos should have investigated further," such that "given the conflicting evidence about whether Banuelos initiated any further investigation, a reasonable juror could conclude that he violated Soler's rights." Doc. No. 203 at 7-8.

5

the Constitution or laws of this state." Cal. Civ. Code § 52.1, subd. (a)-(b). "Properly read, the statutory phrase 'threat, intimidation or coercion' serves as an aggravator justifying the conclusion that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief." *Cornell v. City & Cty. of San Francisco*, 17 Cal. App. 5th 766, 800 (2017).

Courts considering these claims have historically "struggled to articulate clearly when Bane Act liability attaches." *Sandoval v. Cty. of Sonoma*, 912 F.3d 509 (9th Cir. 2018). However, since the initiation of this action, both the state and federal appellate courts in California have more clearly articulated the circumstances under which a defendant may be held liable for a violation of the Act. The California Court of Appeal has explained that "the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the . . . officer had a specific intent to violate the arrestee's right to freedom from unreasonable seizure, not by whether the evidence shows something beyond the coercion 'inherent' in the wrongful detention." *Cornell*, 17 Cal. App. 5th at 801–02. "Reckless disregard of the 'right at issue' is all that [i]s necessary." *Id.* at 804.

Here, contrary to Banuelos' assertion, there is evidence from which a reasonable jury could conclude that Banuelos acted with the requisite intent to establish liability under the Bane Act. For example, Soler has stated under penalty of perjury that he "repeatedly and diligently told Detective Banuelos that they had arrested the wrong guy." Doc. No. 147-1 at 12 (Soler Decl. ¶ 26). According to Soler:

> Banuelos yelled at me, would not listen to me, and acted abusive and intimidating by repeatedly calling me a "fucking liar." He was sarcastic and impatient. He told me I was not answering his questions quickly enough so I was lying. I explained that I was not Dishman. I asked Banuelos to contact San Diego Sheriff's deputies I had grown up with who lived next door to me in 1984 and could verify I was not Dishman. I also asked Banuelos to contact a U.S. Marshal and a U.S. Border Patrol agent who were my friends and could verify that I was James Soler, not Dishman. He ignored these requests. Banuelos asked me if I'd ever been to Arkansas. I told him that I'd only been there once for three days for a funeral. I couldn't recall exactly when I visited

6

> Arkansas but I estimated it was approximately twelve years ago – many years after 1984. Banuelos demanded that I admit I was Dishman.

*Id.* This evidence alone is sufficient to raise a genuine issue regarding Banuelos' specific intent. *See, e.g.*, *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015). It will be for the jury to determine whether the evidence establishes Banuelos' liability under the Bane Act. Accordingly, summary judgment is inappropriate.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant Banuelos' motion for partial summary judgment.

**IT IS SO ORDERED**.

DATE: October 5, 2020

                                                         *[signature]*
HON. MICHAEL M. ANELLO
United States District Judge