# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

JAMES SOLER,

Plaintiff,

v.

COUNTY OF SAN DIEGO, et al.,

Defendants.

Case No. 14cv2470-MMA (RBB)

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES**

[Doc. No. 241]

Plaintiff James Soler brought this action asserting civil rights violations pursuant to 42 U.S.C. § 1983, as well as state law claims for false imprisonment, negligence, and violation of California Civil Code section 52.1. *See* Doc. No. 1. The Court entered judgment in favor of Soler against Defendants Lisa Wilkins and Ray Hobbs ("Wilkins and Hobbs" or "Defendants"). *See* Doc. No. 223. As the prevailing party, Soler now seeks an award of attorneys' fees and expenses pursuant to 42 U.S.C. § 1988. *See* Doc. Nos. 241, 242. Defendants filed a response to the motion, *see* Doc. Nos. 262, 263, Soler replied, *see* Doc. No. 270, and the Court granted Defendants leave to file a sur-reply, *see* Doc. No. 275. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** Soler's motion and **AWARDS** Soler **$721,118.27** in attorneys' fees and expenses.

This action arises out of events involving a case of mistaken identity and James Soler's arrest in January 2014 for a thirty-year old crime he did not commit. Based on those events, Soler instituted this action on October 16, 2014 against the County of San Diego and the San Diego County Sheriff's Department, alleging causes of action for wrongful arrest and detention in violation of his Fourth Amendment rights under 42 U.S.C. § 1983 and California Civil Code § 52.1, false imprisonment, negligence, and municipal liability under 42 U.S.C. § 1983. *See generally* Doc. No. 1. Soler also brought a legal malpractice claim against the San Diego Office of the Public Defender and attorney Salvatore Tarantino. *See id*. Several months later, Soler added claims against San Diego Sheriff's Department Deputies Germaine, Medina, Milton, Smith, and Turvey.[2] *See* Doc. No. 39.

As Soler would later discover, Lisa Wilkins was an attorney employed by the Arkansas Department of Corrections and Ray Hobbs was the Director of the Arkansas Department of Corrections during the relevant time period. *See* Doc. No. 58-1 at 6.[3] Wilkins prepared an affidavit for Hobbs' signature to support a judicial finding of probable cause to conclude that Soler was a wanted escapee from an Arkansas prison, Steven Dishman. In turn, Hobbs presented the affidavit to an Arkansas judge, who issued an Affidavit of Probable Cause to support the extradition of "Steven Dishman, a/k/a James DeWolfe Soler" from California to Arkansas. Based on these events, Soler brought claims against Wilkins and Hobbs. *See* Doc. No. 60.

The Court held that it lacked personal jurisdiction over Wilkins and Hobbs and

---

[1] The Court sets forth the relevant procedural background of this litigation. The parties are well-versed in the underlying facts.

[2] Soler later added claims against San Diego County Sheriff's Deputy Ernesto Banuelos. *See* Doc. No. 60.

[3] Citations to electronically filed documents refer to the pagination assigned by the CM/ECF system unless otherwise noted.

dismissed Soler's claims against them. *See* Doc. Nos. 125, 141. Thereafter, Soler filed suit against Wilkins and Hobbs in the Eastern District of Arkansas. *See Docket*, E.D. AR. Case No. 4:17-cv-00018-BRW. Meanwhile, the Court granted summary judgment in favor of the remaining San Diego defendants. *See* Doc. Nos. 160, 161.

Soler appealed certain aspects of the Court's rulings to the United States Court of Appeals for the Ninth Circuit. *See* Doc. No. 162. The Ninth Circuit affirmed entry of summary judgment on Soler's wrongful detention claim in favor of Defendants Smith, Germain, and Turvey. *See Soler v. County of San Diego*, 762 F. App'x 383 (9th Cir. 2019). The circuit court reversed the entry of judgment on Soler's wrongful detention claim against the County and Defendant Banuelos as well as this Court's determination that it lacked personal jurisdiction over Wilkins and Hobbs. *See id.* Post-remand, Wilkins and Hobbs moved to dismiss Soler's claims; the Court denied the motion. *See* Doc. Nos. 189, 197.

On July 22, 2020, Wilkins and Hobbs made an offer of judgment to Soler under Federal Rule of Civil Procedure 68, which Soler accepted, and the Court entered accordingly. *See* Doc. Nos. 222, 223. The terms of the offer and judgment ordered a payment of $110,000 to Soler and payment of Soler's costs, including attorneys' fees, accrued up to July 22, 2020, to be determined by the Court. *See* Doc. No. 223. The Clerk of Court taxed costs against Wilkins and Hobbs in the amount of $7,851.09. *See* Doc. No. 256. Soler moved to retax costs; the Court declined to do so. *See* Doc. Nos. 259, 278. The only remaining matter for the Court to resolve is the attorneys' fees and nontaxable, out-of-pocket expenses Wilkins and Hobbs owe to Soler.

## DISCUSSION

Soler seeks an award of $1,203,875.00 in fees and requests reimbursement for $7,129.41 in out-of-pocket expenses. Defendants object on multiple grounds, arguing that the amount of fees is unreasonable, with respect to both the requested rates and hours, and many of the expenses are nonrecoverable.

//

### 1. Relevant Law

"Title 42 U.S.C. § 1988 authorizes a district court to award reasonable attorney's fees to a prevailing party in a civil rights action." *Chalmers v. City of L.A.*, 796 F.2d 1205, 1210 (9th Cir. 1986), reh'g denied and opinion amended, 808 F.2d 1373 (9th Cir. 1987). Pursuant to section 1988, out-of-pocket expenses that "would normally be charged to a fee paying client" are also recoverable by the prevailing party. *Chalmers*, 796 F.2d at 1216 n.7. "A plaintiff prevails for purposes of § 1988 when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Roberts v. City of Honolulu*, 938 F.3d 1020, 1023 (9th Cir. 2019) (quoting *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 715 (9th Cir. 2013) (citation and internal quotation marks omitted)). The parties do not dispute that Soler is a "prevailing party" and thus entitled to a fee award pursuant to section 1988.

"Once a party is found eligible for fees, the district court must then determine what fees are reasonable." *Roberts*, 938 F.3d at 1023 (quoting *Klein v. City of Laguna Beach*, 810 F.3d 693, 698 (9th Cir. 2016) (citation omitted)). In order to determine the fee award, the Court calculates the number of hours reasonably expended on the litigation and then multiplies that number by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) ("Section 1988 authorizes courts to award 'a reasonable attorney's fee as part of the costs' to a 'prevailing party' in cases brought under various civil rights statutes, including § 1983.") (quoting 42 U.S.C. § 1988(b)). The resulting calculation is referred to as "the lodestar figure" and "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley*, 461 U.S. at 433.

Additionally, the Ninth Circuit "requires that courts reach attorney's fee decisions by considering some or all of twelve relevant criteria set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975)." *Quesada v. Thomason*, 850 F.2d 537, 539 (9th Cir. 1988). The *Kerr* factors are: "(1) the time and labor required; (2) the novelty and

difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Kerr*, 526 F.2d at 70.

### 2. *Fees: Calculation of the Lodestar*

#### A. <u>Reasonable Hourly Rates</u>

At the first step in its lodestar calculation, the Court must determine a reasonable hourly rate for each attorney and staff member that worked on this case. Here, this includes two attorneys – Todd Burns and Gabriel Cohan – as well as paralegal Alicia Cisneroz (collectively, "counsel"). Soler requests that the Court find the following rates reasonable: (1) a rate of $775 per hour for work performed by Mr. Burns; (2) a rate of $550 per hour for work performed by Mr. Cohan; and (3) a rate of $200 per hour for work performed by Ms. Cisneroz. *See* Doc. No. 241 at 9-11.

Defendants object to Soler's requested rates, arguing that the rates are unreasonable, inadequately supported, and do not reflect the rates for attorneys with comparable skills and experience in similar cases in this legal community. Defendants argue that the following rates are reasonable: (1) $550 for work performed by Mr. Burns; (2) $300 per hour for work performed by Mr. Cohan; and (3) $90 per hour work performed by Ms. Cisneroz. *See* Doc. No. 262 at 21-26.

#### i. *Legal Standard*

Attorneys' fees awarded under section 1988 must be based on the "prevailing market rates in the relevant community," *Blum v. Stenson*, 465 U.S. 886, 895 (1984), for "similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers*, 796 F.2d at 1210. "The hourly rate for successful civil rights attorneys is to be calculated by considering certain factors, including the novelty and difficulty of the

14cv2470-MMA (RBB)

issues, the skill required to try the case, whether or not the fee is contingent, the experience held by counsel and fee awards in similar cases." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008). "A reasonable fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case. The district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel. The way to do so is to compensate counsel at the prevailing rate in the community for similar work; no more, no less." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152, 1158 (9th Cir. 2018) (cleaned up).

"[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community." *Blum*, 465 U.S. at 895-96 n.11; *see also Chaudhry v. City of L.A.*, 751 F.3d 1096, 1110-11 (9th Cir. 2014) ("Fee applicants have the burden of producing evidence that their requested fees are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.") (internal citations and quotations omitted). The relevant legal community is "the forum in which the district court sits." *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205-06 (9th Cir. 2013). "Evidence the Court should consider includes '[a]ffidavits of the [movant's] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the [movant's] attorney.'" *Ravet v. Stern*, No. 07CV31 JLS (CAB), 2010 WL 3076290, at *2 (S.D. Cal. 2010) (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)).

### ii.  Hourly Rates

San Diego is the relevant community when determining the reasonable billing rate for work performed by Soler's counsel and paralegal on this case. The Court considers each timekeeper in turn.

### a.  Todd Burns

Soler requests a rate of $775 per hour for work performed by Mr. Burns. In

support of the requested rate, Soler submits a declaration from Mr. Burns, as well as declarations from attorneys Michael Marrinan, Steven Hubachek, and Carol Sobel. *See* Doc. No. 241-1 at 46-54 (Burns Decl., Exs. 4 and 5); Doc. No. 242 (Sobel Decl.).

The Court is familiar with Mr. Burns' qualifications and experience, which are set forth accurately in his declaration and supported by the declarations of Mr. Marrinan and Mr. Hubachek. In support of the specific requested hourly rate, Burns points to only one previous fee application in an action litigated from 2011 to 2014 in the Central District of California, where the court determined in March 2014 that "$650 is a reasonable hourly rate for Burns." *Dugan v. County of L.A.*, No. 2:11CV08145-CASSHX, 2014 WL 12577377, at *3 (C.D. Cal. Mar. 3, 2014). Burns' requested rate of $650 in the *Dugan* action was likewise supported by declarations from Mr. Marrinan, Mr. Hubachek, and Ms. Sobel. *See id*.

With due respect to the district court's determination in *Dugan*, the Court finds the supporting declarations less helpful. "That other attorneys may think that a given rate is 'reasonable' does not necessarily say what the prevailing market rates actually are. That is especially true when the opinion[s] are expressed by attorneys whose own professional interests might motivate them to favor higher rates." *Sam K. v. State of Haw. Dep't of Educ.*, 788 F.3d 1033, 1041 (9th Cir. 2015). Mr. Marrinan's professional interests might motivate him to favor the rates requested by Soler's counsel in this case. Therefore, his declaration is insufficient to establish that Plaintiff's requested hourly rates are in line with the prevailing rates in the Southern District of California. *Cf. Medina v. Metro. Interpreters & Translators, Inc.*, 139 F. Supp. 3d 1170, 1179 (9th Cir. 2015) ("Plaintiffs' attorneys include their own declarations substantiating their education and experience, as well as four declarations from attorneys in the community with similar skills, experiences, and reputations."). The same is true for Ms. Sobel. Her declaration suffers from an additional deficit, in that she speaks primarily to the prevailing rates in the Central District of California. As this Court has noted before, attorneys in the San Diego community charge different rates than "attorneys who practice in our neighbor to the

7

North." *T.B. v. San Diego Unified Sch. Dist.*, 293 F. Supp. 3d 1177, 1189 (S.D. Cal. 2018). And although Mr. Hubachek may certainly speak to Mr. Burns' qualifications as an attorney, generally, Mr. Hubachek does not opine on the reasonableness of the requested hourly rate in this case.

Accordingly, the Court must determine what constitutes a reasonable hourly rate. The Court is mindful that it must "base its determination on the *current* market rate." *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1107 (9th Cir. 2015) (emphasis in original); *see also Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 981 (9th Cir. 2008) ("[A] district court abuses its discretion to the extent it relies on cases decided years before the attorneys actually rendered their services."). The Court also relies on its own knowledge and experience of customary rates concerning reasonable and proper fees, *see Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011), and considers the relevant *Kerr* factors. *See Davis v. City of San Francisco*, 976 F.2d 1536, 1546 (9th Cir. 1992) (finding that district courts may consider the *Kerr* factors in determining an appropriate market rate).

Over the course of the past several years, courts in this District have awarded hourly rates for work performed in civil cases by attorneys with significant experience anywhere in range of $550 per hour to more than $1000 per hour. *See, e.g., Herring Networks, Inc. v. Maddow*, No. 3:19-cv-1713-BAS-AHG, 2021 U.S. Dist. LEXIS 23163, at *21 (S.D. Cal. Feb. 5, 2021) (finding $1150-$1050 to be reasonable rates for partners with more than 30 years of experience from a Top 100 law firm); *Kries v. City of San Diego*, No. 17-cv-1464-GPC-BGS, 2021 U.S. Dist. LEXIS 6826, at *26-27 (S.D. Cal. Jan. 13, 2021) (finding rates of $650 per hour for attorneys with more than 30 years of experience to be reasonable); *Sunbelt Rentals, Inc. v. Dubiel*, No. 20-cv-876-WQH-BGS, 2020 WL 6287462, at *2 (S.D. Cal. Oct. 27, 2020) (finding $405 rate per hour to be a reasonable rate for a partner in a breach of contract action); *Kailikole v. Palomar Cmty. Coll. Dist.*, No. 18-cv-2877-AJB-MSB, 2020 WL 6203097, at *3 (S.D. Cal. Oct. 22, 2020) (finding $550 rate per hour to be a reasonable rate for a partner in an employment

8

action); *Vasquez v. Kraft Heinz Foods Co.*, No. 3:16-CV-2749-WQH-BLM, 2020 WL
1550234, at *1–2, 7 (S.D. Cal. Apr. 1, 2020) (approving of rates between $700 and $725
for attorneys with approximately 30 years of experience and rate of $550 for attorney
with 12 years of experience); *San Diego Comic Convention v. Dan Farr Productions*, No.
14cv1865-AJB-JMA, 2019 WL 1599188, at *13-*14 (S.D. Cal. Apr. 15, 2019) (finding
reasonable the hourly rates of $760 for partners from a Top 100 law firm with 28-29
years of experience), *attorney fees aff'd* by 807 F. App'x 674 (9th Cir. Apr. 20, 2020);
*Kikkert v. Berryhill*, No. 14cv1725-MMA-JMA, 2018 WL 3617268, at *2 n.1 (S.D. Cal.
July 30, 2018) (an unopposed fee motion after a successful social security appeal, finding
de facto hourly rate of $943 reasonable, citing other decisions in the district approving
rates from $656 to $886).

      The variance in rates of compensation is significant and no doubt a result of case-
specific factors such as whether the fee request and/or rates were challenged, the nature
of the action, the area of the law involved, the national prestige of the attorney's law firm,
whether specialized skills were required to litigate the issues in dispute, and the
experience of the attorney requesting the rate.

      Here, Mr. Burns has practiced law for twenty-five years and is an extremely
experienced trial attorney. He has built a significant civil rights practice over the course
of the last decade. His work in this case was of the highest quality, generally above
reproach, and involved a substantial commitment of time and resolve. Based on these
factors, having conducted a thorough review of the evidence submitted by the parties and
an exhaustive survey of recent caselaw in this District, and "relying, in part on [the
Court's] knowledge and experience" of hourly rates in this community, the Court finds
that **$650 per hour** constitutes a reasonable rate for Mr. Burns' work in this case.
*Ingram*, 647 F.3d at 928.

                 b.    Gabriel Cohan

      Soler requests a rate of $550 per hour for work performed by Mr. Cohan. In
support of the requested rate, Soler once again relies on the Marrinan and Sobel

9

declarations and also submits a declaration from Mr. Cohan, as well as declarations from attorneys Reuben Camper Cahn and Lynn Panagakos. *See* Doc. No. 241-1 at 104-26 (Cohan Decl., Exs. 8 and 9).

As with Mr. Burns, the Court is familiar with Mr. Cohan's qualifications and experience, which are set forth accurately in his declaration and supported by the declarations of Mssrs. Marrinan and Cahn, and Lynn Panagakos. Soler also relies on the Marrinan and Sobel declarations to support the $550 per hour rate requested for work performed by Mr. Cohan. For the reasons set forth above, the Court finds the Marrinan and Sobel declarations to be of limited assistance in determining a reasonable hourly rate for work performed by Mr. Cohan in this case.

The Court once again turns to a survey of recent caselaw in this District and its own knowledge and experience of rates in the San Diego community to determine a reasonable rate. Mr. Cohan has practiced law for approximately thirteen years. He has worked on civil rights cases for approximately nine years. The Court finds that **$485 per hour** is a reasonable rate for the work performed by Mr. Cohan in this action. *See, e.g.*, *Kries*, 2021 U.S. Dist. LEXIS 6826, at *27 (finding rate of $500 per hour for an attorney with 14 years of experience to be reasonable).

c.    Alicia Cisneroz

Soler requests a rate of $200 per hour for work performed by Ms. Cisneroz. In support of the requested rate, Soler relied on a declaration submitted by Ms. Cisneroz, as well as the Sobel and Cohan declarations. A survey of the caselaw in this District reveals a broad range of rates awarded for work performed by paralegals. *See, e.g.*, *Kries*, 2021 U.S. Dist. LEXIS 6826, at *27 ($95); *Aispuro v. Ford Motor Co.*, No. 18cv2045-DMS-KSC, 2020 U.S. Dist. LEXIS 142806, at *11 (S.D. Cal. Aug. 10, 2020) ($200); *Puccio v. Love*, No. 16cv2890-W-BGS, 2020 WL 434481, at *4 (S.D. Cal. Jan. 28, 2020) ($195); *San Diego Comic Convention,* 2019 WL 1599188, at *15 ($290).

Taking this range into consideration, as well as its own knowledge and experience of rates in the San Diego community, the Court finds that **$150 per hour** constitutes a

reasonable rate for the work performed by Ms. Cisneroz in this case.

### iii.   Conclusion

In sum, the Court finds the following hourly rates are in line with the prevailing market rates in this District for attorneys of comparable skill, level, and experience: **$650 per hour** for work performed by attorney Todd Burns; **$485 per hour** for work performed by attorney Gabriel Cohan; and **$150 per hour** for work performed by paralegal Alicia Cisneroz.

## B. Reasonable Hours Expended

At the second step in its lodestar calculation, the Court must determine the number of compensable hours Soler's counsel reasonably expended on this litigation.  Soler seeks compensation for a total of 1831.75 hours.  *See* Doc. No. 241 at 9-12.  Specifically, Soler states that attorney Todd Burns expended 981.6 hours on this litigation; attorney Gabriel Cohan expended 780.3 hours; and paralegal Alicia Cisneroz expended 69.85 hours.  *See id*.

Defendants object to Soler's calculation of compensable hours, arguing that the claimed billable hours must be reduced because Soler seeks compensation for non-compensable time spent on unrelated work, redundant and excessive work, and clerical work.  *See* Doc. No. 230 at 13-16, 23-24.

The Court has undertaken a meticulous review of counsel's billing records, as well as Defendants' general objections and individual objections to specific billing entries. The Court addresses Defendants' general objections in turn below.[4]

### i.   Relevant law

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked."

---

[4] The Court has conducted an exhaustive review of Defendants' line item objections to Soler's counsel's billing entries.  *See* Doc. Nos. 262-6-9 (G. Nield Decl., Exs. A-C).  The Court's omission from the discussion herein of specific individual objections should not be construed as a failure to consider the objection.

*Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citing *Hensley*, 461 U.S. at 433, 437). "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Id*. at 1397-98 (citing *Blum*, 465 U.S. at 892 n.5 (1984), and *Toussaint v. McCarthy*, 826 F.2d 901, 904 (9th Cir. 1987)).

A district court "should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Chaudhry*, 751 F.3d at 1111 (citing *Moreno*, 534 F.3d at 1112). The Court "should exclude from [the] initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434. Hours are not "reasonably expended" if they are "excessive, redundant, or otherwise unnecessary." *Id*. The court can reduce the hours in a fee application through one of two methods. As relevant here, "the court may conduct an hour-by-hour analysis of the fee request, and exclude those hours for which it would be unreasonable to compensate the prevailing party." *Gonzalez*, 729 F.3d at 1203 (internal quotation marks omitted).

### ii. *Defendants' Objections*

#### a. Unrelated Work[5]

Defendants object to Soler's requested compensable hours on the ground that counsel spent many of the hours on "unrelated work." *See* Doc. No. 262 at 27. Defendants include in this category hours expended on this litigation prior to Soler bringing claims against Wilkins and Hobbs, certain time spent working on Soler's claims against the San Diego County Defendants, and hours expended on the Arkansas and appellate court cases. The Court considers each phase of the litigation in turn.

//

//

---

[5] Whether the Court should reduce the total compensable hours based on Soler's partial success in this litigation is a separate issue, addressed *infra*.

## I.   Pre-Third Amended Complaint

Defendants argue that "Wilkins and Hobbs were not involved in this case for the vast majority of the time, including at the beginning of the case" and therefore they should not be responsible for the fees incurred at that time.  Doc. No. 262 at 28.

There is not a bright line rule prohibiting a fee award for work performed by counsel prior to the filing of a complaint against a party.  Rather, hours expended outside the subject litigation are relevant and recoverable so long as it was time that "'would have been undertaken by a reasonably prudent lawyer to advance or protect his client's interest' in the case at bar."  *Armstrong v. Davis*, 318 F.3d 965, 971-72 (9th Cir. 2003) (quoting *Hasbrouck v. Texaco, Inc.*, 879 F.2d 632, 638 (9th Cir. 1989)).  Therefore, "time reasonably spent on pre-complaint investigation, legal research, and informal discovery relevant to developing the theory of the case is properly recoverable[.]"  *Lucas v. White*, 63 F.Supp.2d 1046, 1058 (N.D. Cal. 1999); *see also Webb v. Bd. of Educ. Cnty., Tenn.*, 471 U.S. 234, 243 (1985) (explaining that "some of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed 'on the litigation.'  Most obvious examples are the drafting of the initial pleadings and the work associated with the development of the theory of the case."); s*ee also Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 988 (9th Cir. 2001) (awarding pre-litigation fees for conferences with clients, drafting the complaint and other reasonable efforts directed toward commencing litigation).

Here, the Court finds that certain hours expended prior to Wilkins and Hobbs' appearance in the litigation are compensable.  Specifically, the time counsel spent performing the requisite pre-litigation investigation and drafting the original complaint in this action is reasonably charged to Wilkins and Hobbs.  Soler initially brought his claims against San Diego County Defendants as well as Doe Defendants who were "employees of the State of Arkansas or its agencies (including the Arkansas Office of the Governor and the Arkansas Department of Corrections)."  Doc. No. 1 at 3.  Soler should not be penalized simply because Wilkins and Hobbs were not immediately identifiable.  It was

reasonable for Soler to pursue claims against the responsible parties in Arkansas despite not knowing those individuals' identities. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (holding that "where the identity of the alleged defendant[][is] not [] known prior to the filing of a complaint[,] the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds.") (quoting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).

However, the Court finds certain hours expended by counsel prior to the filing of the Third Amended Complaint non-compensable. For example, Soler is not entitled to fees for time spent preparing for and attending an Early Neutral Evaluation conference with only the San Diego County Defendants or hours expended meeting and conferring on unrelated issues with counsel for the San Diego County Defendants.

## II. Post-Third Amended Complaint

With respect to fees incurred after the filing of the Third Amended Complaint, Defendants argue that "it is important to parse the fees related to Plaintiff's limited claims against Wilkins and Hobbs from the non-compensable fees related to Plaintiff's work on claims against the San Diego Defendants." Doc. No. 262 at 28. The basis for this objection is two-fold; Defendants argue that (1) Soler's claims against the San Diego County Defendants are unrelated to his claims against Wilkins and Hobbs, and (2) Soler's claims against the San Diego County Defendants were largely unsuccessful.

"A plaintiff is not eligible to receive attorney's fees for time spent on unsuccessful claims that are unrelated to a plaintiff's successful § 1983 claim. Such unrelated claims must be treated as if they had been raised in a separate lawsuit to realize 'congressional intent to limit awards to prevailing parties.'" *McCown v. City of Fontana*, 565 F.3d 1097, 1103 (9th Cir. 2009) (quoting *Hensley,* 461 U.S. at 435). Accordingly, the Court has deducted certain hours expended by counsel on Soler's legal malpractice claim as unrelated to his claims against Wilkins and Hobbs. Soler's claims are otherwise

interrelated and whether the Court should reduce Soler's fee award based on his partial success is addressed below.[6]

As a separate matter, and consistent with the Court's ruling on Soler's motion to retax, the Court declines to award fees for time spent by counsel preparing for depositions of San Diego County Defendants taken after Wilkins and Hobbs' dismissal from the action. *See Soler v. County of San Diego*, No. 14cv2470-MMA (RBB), 2021 U.S. Dist. LEXIS 95347, at *10 (S.D. Cal. May 19, 2021) ("[T]he Court ultimately finds that Defendants should not be taxed for deposition costs incurred by Soler after Defendants' discharge from the action."). Likewise, the Court finds the time expended by counsel after the dismissal of Wilkins and Hobbs from the case on certain discovery-related tasks and a jail site visit non-compensable.

### III. Arkansas Litigation

Defendants object to Soler's request for fees incurred for work performed by counsel on the Arkansas litigation against Wilkins and Hobbs. Soler argues that the time is compensable because the work "(1) protected Mr. Soler from potentially having his claims against Defendants time-barred; (2) helped advance the ultimate result achieved, because this Court relied on the denial of motions in the Arkansas case to deny the same motions filed in this forum; and (3) is encompassed in Defendants' offer of judgment, which Mr. Soler accepted." Doc. No. 270 at 30-31.

Caselaw exists to support Defendants' objection. *See, e.g.*, *Federal Deposit Insurance Corp. v. Lake Elsinore 521*, Case No.: 2:11-cv-00386-GMN-LRL, 4-5 (D.

---

[6] As the Supreme Court has observed, "there is no certain method of determining when claims are 'related' or 'unrelated,'" but claims are deemed related if they either "involve a common core of facts" or are "based on related legal theories." *Hensley*, 461 U.S. at 435, 437 n.12. The Ninth Circuit has also acknowledged that the *Hensley* test for relatedness "is not precise." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 903 (9th Cir. 1995). The circuit court has articulated the relevant inquiry as "whether relief sought on the unsuccessful claim 'is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.'" *Thorne v. City of El Segundo*, 802 F.2d 1131,1141 (9th Cir. 1986). Thus, a district court must ask "whether the unsuccessful and successful claims arose out of the same 'course of conduct.' If they did [not], they are unrelated under *Hensley*." *Schwarz*, 73 F.3d at 903.

Nev. Nov. 1, 2011) ("This Court is not going to award attorney's fees with respect to work done on another case, even if the subject matter is similar."); *Albani v. Albani*, No. 15cv1980, 2016 U.S. Dist. LEXIS 71523, at *3 (S.D. Cal. May 31, 2016) ("Although the state court proceedings where initiated by Erika and would not have occurred but-for the wrongful removal in this case, awarding attorneys' fees for work done for another case and before another court would be improper."); *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 536 n.10 (5th Cir. 1986) ("To be sure, hours expended on an unrelated lawsuit are not recoverable in this litigation."). However, the Ninth Circuit has held that "the award of fees should cover 'every item of service which, at the time rendered, would have been undertaken by a reasonably prudent lawyer to advance or protect his client's interest' in the case at bar." *See Armstrong*, 318 F.3d at 971 (quoting *Hasbrouck v. Texaco, Inc.*, 879 F.2d 632, 638 (9th Cir. 1989)). This includes work performed by counsel in another case if it "was important to the preservation" of the clients' rights and undertaken "in order to protect their interests." *Id*. at 972.

Based on the standards articulated in *Armstrong*, the Court finds that the hours expended by Soler's counsel on the Arkansas litigation are generally compensable in this action. For example, Soler is entitled to fees for work performed by counsel related to drafting and filing the Arkansas complaint and defending against Wilkins and Hobbs' motion to dismiss in that action.

## VI. Appellate Proceedings

Defendants object to Soler's request for fees arising out of the related appellate proceedings. Defendants argues that "the [circuit] court expressly held that 'Each party shall bear its own costs on appeal'" and thus an award of fees "would circumvent that ruling." Doc. No. 262 at 30. Soler replies that he is entitled to compensation for the hours spent by counsel on appeal pursuant to the Ninth Circuit's holding in *Yamada v. Snipes*, 786 F.3d 1182 (9th Cir. 2015), in which the circuit court held that plaintiffs who "prevailed in an interlocutory appeal, and subsequently became prevailing parties after

the district court entered judgment in their favor . . . are entitled to attorney's fees arising from the prior appeal." *Id*. at 1210.

The Court agrees that *Yamada* directly controls on this issue and permits a belated award of appellate fees.  As the Court previously explained, "[t]he Ninth Circuit has explicitly held that appellate ''costs' under Rule 39 do not include attorney's fees.'  With respect to attorneys' fees awards, this distinction clearly favors a party such as Soler who enjoyed partial success on appeal but did not yet qualify as a 'prevailing party' under section 1988." *Soler*, *supra*, 2021 U.S. Dist. LEXIS 95347, at *6 (quoting *Fam. PAC v. Ferguson*, 745 F.3d 1261, 1268 (9th Cir. 2014)).  Thus, the circuit court's order declining to award costs on appeal to either party in this case does not preclude a fee award now that Soler is a prevailing party in this litigation against Wilkins and Hobbs.  As such, the hours expended by Soler's counsel on appeal are generally compensable.

### b.  Redundant and Excessive Billing Entries

Defendants also object to Soler's fee request on the grounds that Soler "is attempting to recover fees for numerous excessive, redundant and/or unnecessary hours." Doc. No. 262 at 32.  As an example of excessiveness, Defendants assert that Soler's counsel spent an unreasonable amount of time preparing for certain depositions compared to the actual length of those depositions.  *See id*.  Defendants further argue that it is unreasonable to request reimbursement for duplicative work performed by both attorneys unnecessarily.

"By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case." *Moreno*, 534 F.3d at 1112.  "Courts must exercise judgment and discretion, considering the circumstances of the individual case, to decide whether there was unnecessary duplication [of effort]." *Democratic Party of Washington State v. Reed*, 388 F.3d 1281, 1286–87 (9th Cir. 2004); *see also Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989) ("[T]he participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.").  The Ninth Circuit has recognized that "'the participation of more than one

17

attorney does not necessarily constitute an unnecessary duplication of effort.'" *McGrath v. County of Nevada*, 67 F.3d 248, 255 (9th Cir. 1995) (quoting *Fujikawa*, 871 F.2d at 1435 n.9).  Instead, "[a] reduction of fees is warranted only if the attorneys are *unreasonably* doing the same work." *Noyes v. Grossmont Union High Sch. Dist.*, 331 F. Supp. 2d 1233, 1250 (S.D. Cal. 2004) (emphasis in original) (internal quotations omitted).

Upon review, the Court finds that Mr. Burns and Mr. Cohan's billing entries are generally "reflective of the division of responsibilities between counsel."  Doc. No. 270 at 35.  Moreover, counsel did not spend an unreasonable amount of time preparing for the specific depositions with which Defendants take issue.  The Court therefore declines to reduce the total compensable hours based on the grounds of redundancy or excessiveness.

### c. Clerical Work

Finally, Defendants object to compensating Soler for any hours expended by counsel or Ms. Cisneroz on clerical work.  Defendants cite to several examples, including time spent "scheduling depositions, calls to court reporters and attorney services."  Doc. No. 262 at 26.  Defendants are correct that purely clerical work is not compensable at attorney or paralegal rates.  *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989); *Davis*, 976 F.2d at 1536.  Soler replies that "to alleviate any concern that some of the time Ms. Cisneroz billed was for what might be considered clerical tasks, Mr. Soler agrees to a 30% cut of the $13,970 billed for Ms. Cisneroz's work, such that he requests only $9770 for that work."  Doc. No. 270 at 25.

"When clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors."  *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009).  As such, the Court finds time expended on clerical tasks non-compensable at any billing rate.  *See id.*, 569 F.3d at 921 (disallowing recovery of paralegal billing entries for preparing letters, assembling, and organizing documents, obtaining transcripts, and tracking packages).

//

18

*iii. Conclusion*

Based on the foregoing, the Court calculates the reasonable hours expended on this litigation as follows: **796.3 hours** for Mr. Burns; **555.6 hours** for Mr. Cohan; and **46.55 hours** for Ms. Cisneroz. The total number of reasonable hours expended is **1398.45**.

C. <u>Lodestar Figure</u>

Based upon the reasonable hourly rates identified above, and the number of hours reasonably expended, the lodestar calculation is as follows:

| <u>Timekeeper</u> | <u>Reasonable Hourly Rate</u> | <u>Reasonable Hours Expended</u> | <u>Lodestar Figure</u> |
|---|---|---|---|
| Mr. Burns | $650 | 796.3 | $517,595.00 |
| Mr. Cohan | $485 | 555.6 | $269,466.00 |
| Ms. Cisneroz | $150 | 46.55 | $6,982.50 |
| **TOTAL** | | **1398.45** | **$794,043.50** |

### 3. *Adjustment to the Lodestar Figure*

After calculating the lodestar figure, the Court must consider whether to adjust the figure based on Soler's limited or partial degree of success in this litigation.[7] Defendants urge the Court to adjust the lodestar figure downward by 30-50% to prevent "an inequitable windfall to counsel particularly given . . . the modest at best results obtained against Arkansas Defendants Wilkins and Hobbs." Doc. No. 262 at 33. Defendants

---

[7] Additionally, a "court may adjust the lodestar upward or downward using a 'multiplier' based on [the *Kerr*] factors not subsumed in the initial calculation of the lodestar." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). The Court has already considered several of the *Kerr* factors and does not reconsider those factors in adjusting the lodestar. Because the Court did not factor Soler's partial success into the lodestar figure above, the Court's consideration of that issue does not pose a double counting problem. *Cunningham v. County of L.A.*, 879 F.2d 481, 488 (9th Cir. 1988) (noting that "where a factor is generally considered as part of the lodestar, further adjustments based on that factor will ordinarily amount to impermissible double counting and will rarely be sustained.").

contend that "there is no legal or equitable basis for holding Wilkins and Hobbs obligated for the fees and costs Plaintiff incurred in pursuing claims against other defendants" in light of the fact that Soler was ultimately "unsuccessful in his claims against all but one (Banuelos) of the other defendants." *Id.* at 29.

Soler responds that despite the interrelatedness of his claims, counsel "excised 644.1 hours of time that could be billed under *Hensley*" or "nearly 30% of the otherwise applicable lodestar fee" to account for hours expended on his unsuccessful claims. Doc. No. 270 at 27. Soler argues that any further reduction by the Court is unwarranted.

### i. *Relevant Law*

"[A]ttorney's fees awarded under 42 U.S.C. § 1988 must be adjusted downward where the plaintiff has obtained limited success on his pleaded claims, and the result does not confer a meaningful public benefit." *McCown*, 565 F.3d at 1103; *see also Hensley*, 461 U.S. at 44 ("[T]he extent of a plaintiff's success is a crucial factor for determining the proper amount of an award of attorney's fees under 42 U.S. § 1988."); *A.D. v. California Highway Patrol*, 712 F. 3d 446, 460 (9th Cir. 2013). A court should reduce a fee award if "the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 461 U.S. at 439-40. Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436. If so, courts have equitable discretion to reduce the fee award. *Id*. at 436-37; *see also Morales v. City of San Rafael*, 96 F.3d 359, 364 (9th Cir. 1996) (explaining in a civil rights action that "the district court was not only free but obligated to consider 'the results obtained' by Morales, or 'the extent of [his] success'") (quoting *Hensley*, 461 U.S. at 436, 440).

In evaluating the degree of success, the Court may consider, but is not limited to, several factors: the amount and nature of claims the Plaintiff prevailed on compared to those that were dismissed, the damages awarded compared to the amount sought, the damages awarded relative to the amount of attorney's fees sought, and whether the suit

conferred a benefit on the public. *See McCown*, 565 F.3d at 1103; *McGinnis v. Kentucky Fried Chicken of California*, 51 F.3d 805, 810 (9th Cir. 1994). Importantly, the Supreme Court has rejected application of strict proportionality or simple arithmetic proration. *See City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986) ("We reject the proposition that fee awards under § 1988 should necessarily be proportionate to the amount of damages a civil rights plaintiff actually recovers."); *Hensley*, 461 U.S. at 435 n.11 ("We agree with the District Court's rejection of a mathematical approach comparing the total number of issues in the case with those actually prevailed upon.") (internal quotation marks omitted).

### ii. *Analysis*

As noted above, with the exception of his legal malpractice claim, Soler's successful and unsuccessful claims were interrelated. Thus, the Court must proceed to step two and "complete the *Hensley* analysis by discussing whether [Soler's] significant accomplishments in this case justify the fee amount requested." *Thorne*, 802 F.2d at 1142 (citing *Hensley*, 461 U.S. at 434-37; *Rivera*, 106 S. Ct. at 2691-92). In other words, the Court must analyze whether the success obtained by Soler is proportional to the efforts expended by counsel. *Hensley*, 461 U.S. at 434. This reflects the idea that when a prevailing party obtains "excellent results, his attorney should recover a fully compensatory fee." *Id*. at 435. When a party achieves "only partial or limited success," however, then compensation for all of the "hours reasonably expended on the litigation as a whole . . . may be an excessive amount." *Id*. at 436. Because "[t]here is no precise rule or formula for making these determinations," a court may "simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 437. The district court "necessarily has discretion in making this equitable judgment." *Id*.

Here, Soler failed to succeed as to all but one of his claims against the San Diego County Defendants, including his municipal liability claim against the County. The Court held that his wrongful arrest claim failed as a matter of law and he did not challenge that holding on appeal. Nevertheless, Soler's counsel achieved significant

21

success on appeal and post-remand. *Hensley*, 461 U.S. at 435. The question is whether Soler "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Id*. at 434. A plaintiff who did not achieve every goal yet still "obtained excellent results . . . should recover a fully compensatory fee." *Id*. at 435. Soler ultimately settled his claims for a substantial sum. *See Bravo v. City of Santa Maria*, 810 F.3d 659, 666-67 (9th Cir. 2016) (holding that "the district court may, within the exercise of its discretion, consider the damages portion of a settlement payment by other defendants in evaluating a plaintiff's degree of success" if "the plaintiff's claims against both sets of defendants 'involve a common core of facts' or are 'based on related legal theories.'" (quoting *Hensley*, 461 U.S. at 435)). Moreover, "the public benefit of deterring unconstitutional conduct by law enforcement officials" is relevant and "when a decision has 'served the public interest by vindicating important constitutional rights' an award of attorney's fees that is disproportionate to the actual damages may be appropriate." *McCown*, 565 F.3d at 1105 (quoting *Rivera*, 477 U.S. at 572). Taking all of these factors into careful consideration, as well as Soler's effort to account upfront for his limited success by reducing the fee request, the Court concludes that only a slight adjustment of the lodestar figure is appropriate. Accordingly, the Court reduces the lodestar figure by ten percent.

### iii.    Conclusion

In sum, the Court concludes that a minimal equitable reduction of Soler's fee award is appropriate based on his partial success in this litigation. Applying a ten-percent reduction results in an adjusted lodestar figure of **$714,639.15**.

### 4.  Expenses

Soler also seeks reimbursement for reasonable out-of-pocket expenses incurred by counsel during this litigation. Soler requests a total award of $7,129.41, which includes the cost of hiring a private investigator, postage and shipping costs, service of process costs, photocopy costs, travel expenses, and costs associated with certain video depositions. *See* Doc. No 241-2 (Pl. Ex. 12).

Defendants do not dispute $748.02 of the total request, an amount which includes expenses related to shipping, postage, service, and copying. *See* Doc. No. 262-10 at 2-3 (G. Nield Decl., Ex. D). Defendants also do not dispute $1,040.86 in travel costs. *See id.* at 7. Defendants object to the remaining expenses primarily on the grounds of vagueness and unrelatedness.

A. <u>Relevant Law</u>

Non-taxable, or "out-of-pocket" expenses can be requested in a motion for attorneys' fees. Fed. R. Civ. P. 54(d)(2) (describing motion for "attorney's fees and related nontaxable expenses"). "Under § 1988, the prevailing party may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (citations and internal quotation marks omitted). "Such out-of-pocket expenses are recoverable when reasonable." *Id*.

The Ninth Circuit has held that an award to a prevailing party "can include reimbursement for out-of-pocket expenses including . . . travel, courier and copying costs." *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 580 (9th Cir. 2010). Other recoverable expenses include expenses related to discovery and expenses related to computerized research. *See Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994) (noting that "expenses related to discovery" are recoverable); *Trs. Of Constr. Indus. & Laborers' Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258-59 (9th Cir. 2006) (holding that "reasonable charges for computerized research may be recovered.").

B. <u>Analysis</u>

Defendants first object to Soler's request for reimbursement of expenses related to work performed by a private investigator prior to the initiation of this litigation. Courts in this District have found the costs associated with the use of private investigators reimbursable as a nontaxable expense. *See, e.g., Macias v. Lange*, No. 14cv2763-GPC (JMA), 2017 U.S. Dist. LEXIS 86901, at *20 (S.D. Cal. June 6, 2017) (awarding expense of a private investigator). Moreover, as noted above, "time reasonably spent on pre-

complaint investigation . . . relevant to developing the theory of the case is properly recoverable[.]" *Lucas*, 63 F.Supp.2d at 1058. As such, the Court finds that Soler's investigator fees were reasonably incurred and are reimbursable.

Defendants object to certain expenses claimed by Soler as vague, arguing that Soler has not demonstrated that those expenses are reasonable or related to the litigation of his claims against Wilkins and Hobbs. The Court has reviewed the disputed expenses and finds that some are indeed vague and not sufficiently supported. For example, Soler requests reimbursement for expenses related to United States Postal Service in December 2015 and California Department of Motor Vehicles subpoena fees in January 2016 but fails to explain why these expenses were necessarily incurred and does not provide enough detail to justify the amounts charged. Additionally, there are a series of postage and photocopy charges incurred between March 30, 2019 and March 11, 2020 for which Soler has not provided receipts or did not sufficiently identify why the expense was necessarily incurred. As such, the Court will deduct these expenses from the total award.

Next, Defendants generally dispute Soler's entitlement to reimbursement for expenses incurred after Wilkins and Hobbs' dismissal from the case. For the reasons set forth above with respect to Soler's fee request, the Court will deduct certain expenses from his total award. Soler is not entitled to reimbursement for the cost of deposition notices, postage, mailing, or photography incurred subsequent to Wilkins and Hobbs' dismissal from this action and unrelated to his successfully litigated claims.

Defendants also object to an award of expenses related to counsel's travel to Pasadena for oral argument before the appellate court. *See id*. at 3-8. However, "[p]laintiffs are entitled to their transportation costs as part of an award of fees under section 1988." *Chalmers*, 796 F.2d at 1216 n.7. Defendants essentially concede this point by not objecting to Soler's request for reimbursement of the expenses related to counsel's travel to Arkansas in 2016. And although Soler is not entitled to taxable appellate costs, the Court may award travel expenses as "reasonable out-of-pocket expenses compensable under section 1988." *Davis v. Mason Cty.*, 927 F.2d 1473, 1488

24

(9th Cir. 1991). As such, Soler is entitled to reasonable expenses for counsel's travel to Pasadena.

Defendants object to Soler's request for the costs associated with certain video depositions taken post-remand, arguing that the Clerk of Court previously taxed transcription costs against Wilkins and Hobbs. *See id.* at 8-9; *see also* Doc. No. 256. District courts allow recoupment of video deposition expenses if those expenses were reasonably incurred. *See, e.g.*, *Daniel v. Ford Motor Co.*, No. 2:11-02890 WBS EFB, 2018 U.S. Dist. LEXIS 70545, at *11 (E.D. Cal. Apr. 25, 2018) (holding that the prevailing party "may recover costs for the deposition videos billed here because defendant anticipated that the videos could be used at trial . . ."); *MEMC Elec. Materials v. Mitsubishi Materials*, No. C-01-4925 SBA (JCS), 2004 WL 5361246, *3-5 (N.D. Cal. Oct. 22, 2004) (allowing costs for both printed transcripts and videotaping of depositions). The video deposition costs at issue are reasonable and reimbursable. The depositions were taken at the outset of a global pandemic with a looming discovery deadline preventing their postponement. It would have been unreasonable to expect witnesses or counsel to travel unnecessarily to attend depositions in person.

C. Conclusion

In sum, the Court finds that Soler is entitled to reimbursement in a total amount of **$6,479.12** for reasonably incurred expenses.[8]

## CONCLUSION

Based on the foregoing, the Court **AWARDS** Soler **$721,118.27** in attorneys' fees and expenses.

**IT IS SO ORDERED**.

DATE: June 18, 2021

HON. MICHAEL M. ANELLO
United States District Judge

---

[8] The Court notes that it may reduce costs as well as fees to reflect Soler's partial success but declines to do so. *See Cummings v. Connell*, 316 F.3d 886, 899 (9th Cir. 2003).